[Crim. No. 940. Fourth Dist. Aug. 25, 1953.]

THE PEOPLE, Respondent, v. ANTONIO SILVA, Appellant.

Meyer & Dreizen for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with nine separate counts of grand theft. He pleaded not guilty to each count and later was allowed to change his plea by pleading guilty to three of the counts. Still later, he was permitted to again change his plea and pleaded not guilty as to all counts. The jury found him guilty as charged on six counts, and not guilty on the other three. His motion for a new trial was denied, judgment was entered sentencing him to prison on each of the six counts, the sentences to run concurrently. He has appealed from the judgment and from the order denying a new trial.

The appellant was the president of a corporation which he and three other men organized. No stock was issued, no directors' meetings were held, and two of the other men dropped out. The firm, which was then apparently operated as a partnership by the appellant and one of the other men, sold appliances and did some construction work. In the spring of 1951, an agreement was signed by a bank and the appellant as president of this corporation, by which the bank agreed to purchase conditional sales contracts and other evidences of debt representing the sales of new merchandise and services, and the corporation agreed, among other things, that all contracts offered to the bank would be valid contracts with bona fide purchasers; that the articles covered had been delivered and completely installed; and that all things would be as represented in the contracts offered to the bank. In October, 1951, another document of a similar nature was signed by the bank and the appellant as president of the corporation, providing for similar warranties.

A number of such conditional sales contracts were assigned to the bank by the appellant, and accepted, the proceeds being credited to the corporation's account in the bank. All of the counts of the complaint involved transactions of that nature except one, in which the contract sold to the bank purported to be one whereby the corporation agreed to do certain work in the remodeling of a house on specified terms and with a specified down payment. It was the theory of the prosecution that the appellant thus secured funds for the use of the corporation by fraud in thus representing to the bank that the merchandise described in the conditional sales contracts had been delivered to the purchasers; and that, with respect to the construction contract he represented that the work contracted for had been completed. It was the theory of the

defense that the bank made an independent investigation with respect to the purchasers named in the conditional sales contracts, and did not rely on the representation made by the appellant; that the debts represented by the conditional sales contract were valid obligations of the purchaser, and the bank could have collected thereon; that the bank held on reserve a certain amount of money belonging to the corporation; and that the transactions showed no intent to defraud on the part of the appellant.

It would serve no useful purpose to review all of the evidence with respect to the individual counts. It conclusively appears that the appellant signed and turned over to the bank, under the previous written agreement, the five conditional sales contracts here involved and received credit for the balances appearing to be due thereon. These contracts had all been signed by the ostensible purchasers of the appliances but none of the appliances described were ever delivered to the supposed purchasers. In most instances, some of the blank spaces had not been filled in when the supposed contracts were delivered to the appellant by the persons who signed them, and the blanks were filled in before the appellant delivered them to the bank. In one instance, one appliance was substituted for another in the contract. In one instance the purchaser ordered a freezer of a certain make, the appellant's firm had never had a freezer of that make, and the distributor of that freezer had never sold one with the serial number which was inserted in the contract. Most of the contracts listed down-payments when no down-payment had been made. In one instance, the purchaser cancelled his order but the contract was turned into the bank. When the purchaser received the payment book from the bank he gave it to the appellant and the appellant told him that he had used the money and was going to make the payments himself. The purchaser never made any payments but the bank records showed that six monthly payments were made. Another purchaser had not received the merchandise and when he received the payment book from the bank he gave it to the appellant and the appellant said he would make the payments. The evidence clearly indicates that the misrepresentations made in all five of these incidents were knowingly made by the appellant. In the other count, involving the construction contract, it appears from the appellant's testimony, as well as from the other evidence, that it was never intended that appellant's firm should do any of the work involved. The

owner of the house was a friend of the appellant, and the appellant intended to get the money from the bank through the use of this contract and other documents, and loan the money to the friend as it was needed. The appellant sold the papers to the bank and furnished the bank a certificate signed by his friend stating that the work had been completed. He did this with full knowledge that the work had not yet been done, and while he received a credit of $2,500 from the bank he gave his friend $800 only, and testified that he was unable to make later payments which he intended to make.

In addition to the transaction involved in the various counts of the complaint evidence was received of 10 other incidents of a similar nature. While some of the circumstances varied in details, almost exactly the same plan of operation was disclosed therein.

Prior to the trial the appellant, on two occasions, made voluntary statements to members of the district attorney's staff. He admitted that he had signed the agreements with the bank, that he understood that the bank bought his contracts with the understanding that the merchandise had been delivered to the purchasers, and that he had inserted certain things in the contracts. He further stated that when his company was short of cash he arranged with some of his salesmen to have them sign contracts so he could get money from the bank on them, and intended to pay the bank back when he had the money; that some of the contracts were signed in blank and he filled them out, took them to the bank and got the money; that the material mentioned in the contracts was not delivered to the salesmen and it was never intended that it should be; that he turned in one contract without knowing whether or not the merchandise had been delivered; that in the case of another contract the corporation was not supposed to deliver the appliance; that he made some payments on several of the contracts; that on several of the transactions he had had a criminal intent; that on some of the contracts he filled in blanks without knowing whether the goods had been delivered or not; that he offered to run the construction contract through the bank and give his friend the proceeds but after one payment he was unable to send any more; that the balance went into his company; and that he knew the work had not been finished when he delivered the completion certificate to the bank. The appellant's testimony at the trial also confirms

many of the material facts involved, and in other respects clearly justifies inferences which support those facts.

■ The appellant first contends that the evidence was not sufficient to support the verdicts. It is argued that no intent to defraud appears; that no false representation was made as to past and existing facts; that the bank made an independent investigation and therefore did not rely on any representation made by the appellant; that the evidence did not show any representation that the merchandise had been delivered to the purchasers; that the conditional sales contracts merely stated that the merchandise had been accepted by the purchaser; that the conditional sales contracts were valid and enforceable against the persons who signed them; that the bank collected some payments on the contracts and could have proceeded against the purchasers for the rest of the amounts due; and that if any crime was committed the purchasers involved in the counts on which he was convicted were all accomplices, and their testimony was not corroborated by any other evidence except by the testimony of other accomplices.

None of these contentions are sustained by the record. While some slight investigation was made by the bank as to the credit standing of some or all of the supposed purchasers, no investigation was made with respect to whether or not the merchandise had been delivered. There was ample evidence that the bank relied on the representation that delivery had been made in accordance with the written agreement, and did not exclusively rely on the possibility of any other source of payment. It can hardly be said that the various contracts were valid and enforceable when the goods contracted for were not delivered, and when many of them were signed with a complete understanding that nothing was being purchased. Assuming that some of the supposed purchasers were accomplices their testimony was sufficiently corroborated by the voluntary admissions of the appellant, by his testimony at the trial, and in part by other evidence. The verdict was further supported by evidence of the appellant's admissions and by some of his testimony, with the reasonable inferences therefrom. The matters relied upon by the appellant in this connection constitute, at best, mere conflicts in the evidence.

Appellant's further contentions that the court committed prejudicial error in admitting the admissions of the defendant without otherwise establishing the corpus delicti, and in not granting his motion for an advisory verdict require little

consideration. Most of the evidence, including the contracts with the bank, the sales contracts turned over to the bank, and the testimony of persons involved in each of the transactions, was received before the evidence of admissions by the appellant was offered. The evidence being sufficient to support a conviction, the motion for an advisory verdict was properly denied.

It is next contended that the court erred in refusing to strike the testimony of some 10 witnesses who were involved in the other offenses of which evidence was received. It is argued that this evidence had no bearing on the issues involved in this case, and that the testimony of some of these witnesses varied in some details from the facts testified to by the witnesses directly involved in these charges. These witnesses testified with respect to similar transactions taking place between August, 1951, and February, 1952, the same period of time covered by the charges involved in the various counts of the complaint. Such evidence was admissible as tending to show motive, scheme, plan or system, and on the issue of intent. No question of remoteness was involved and no error appears in the court's rulings in that connection.

Several objections are raised with respect to the instructions.

It is first contended that the court erred in refusing to instruct the jury that the witnesses who had signed the various contracts, as purported purchasers, were accomplices as a matter of law. No evidence is pointed out which would justify the giving of that instruction. The most that can be said is that there is a conflict in this regard, with respect to some of such witnesses. The instruction was properly refused, and the court submitted to the jury under proper instructions the question as to whether such witnesses were accomplices. Moreover, aside from other matters, the testimony of the accomplices, if such they were, was sufficiently corroborated by the extrajudicial admissions of the appellant.

It is next contended that the court erred in not giving three instructions requested by the appellant. These instructions were to the effect that in such a case a false pretense must relate to a past or existing fact, and not merely to a promise to perform some act in the future; that the defendant must be found not guilty if the jury found that the notes executed by the purchasers were binding upon them; and that he must be found not guilty if it was found that the bank made and relied upon its own investigation before crediting any funds to the account of the corporation. These instruc-

tions were refused as covered, and were sufficiently covered by an instruction given which fully explained that the false pretense involved must be a fraudulent representation of an existing or past fact, that the representation made must be relied on, and that if the other party makes an independent investigation and relies thereon rather than on any representation made to him by the accused person, the latter would not be guilty of obtaining such property by means of false representation or pretense. The instructions, as a whole, were sufficient to cover the issues as presented by the evidence, and no prejudice appears.

 Complaint is further made of an instruction which explained that evidence of other crimes had been received for a limited purpose only, explaining that purpose, and telling the jury that such evidence must not be considered for any other purpose. The objection raised is that the instruction failed to specify what such other crimes were, and was prejudicial to the appellant because the matters testified to by such witnesses were not crimes, as was inferred by the instruction. The instruction was called for by the evidence produced, the nature of the acts shown by the testimony was fully apparent to the jury, and no possible prejudice appears.

The judgment and order are affirmed.

Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 24, 1953.