[Crim. No. 5681. Second Dist., Div. Three. Jan. 8, 1957.]

THE PEOPLE, Respondent, v. NAPOLEON SHAL-HOOB, JR., Appellant.

Jesse A. Hamilton for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

SHINN, P. J.—By information Napoleon Shalhoob, Jr., was charged with the commission of four felonies, namely, in Count I with violation of the Corporate Securities Law, in violation of section 26104, subdivision (a) Corporations Code, in that he sold and issued for value to Dr. Donald E. Brannan a security, to wit, a certificate of interest in an oil and gas mining title and lease, without first having applied for and secured from the Commissioner of Corporations a permit so to do, and in succeeding counts with grand theft May 12, 1954, in taking $1,500, the personal property of Dr. Brannan; in Count III with grand theft of $1,250 from the same person on May 19, 1954, and in Count IV with having taken $920 from the same person on May 26, 1954. He was convicted in a jury trial of all the charged offenses and he appeals from the judgment.

It is not contended on the appeal that the evidence was insufficient to justify the verdict with respect to any of the

charged offenses. The points on appeal are (1) the trial court erred in excluding evidence of transactions between appellant and the prosecuting witness after May 26, 1954; (2) the trial court erred in allowing over the objection of appellant proof of facts not charged in the information, which, if true, would have constituted another offense; and (3) the court erred in giving instructions inapplicable to the issues.

Appellant's briefs do not recite the evidence and for the purposes of our opinion a brief outline of the same will be sufficient. Appellant represented to Dr. Brannan that he was the president of the Chieftain Oil Company, having a lease on 2,500 acres at Lompoc; that he was going to drill an oil well on it and needed additional financing. He represented that a group of millionaires were backing him; that they had allocated $50,000 for the venture and that he needed an additional $10,000. He showed Dr. Brannan and a Mr. Delaney a checkbook which purportedly showed a bank balance of over a million dollars. He left in the doctor's office mailbox a proposed agreement which he had signed but which Dr. Brannan did not sign when advised by his attorney that it might have the legal effect of making him a partner or joint adventurer with appellant. On May 12, 1954, the doctor met appellant on the land and invested $1,500 in reliance upon appellant's representations. On the several dates stated in the information Dr. Brannan made further investments of $1,250 and $920.

On May 12 appellant gave Dr. Brannan a receipt for $1,500 which indicated that it was paid on "an account" of $5,000, leaving a balance of $3,500. It said in part: "For JOINT ENTERPRISE—LOMPOC PROPERTY WHO IS A MEMBER ON THE BOARD AND TREASURER IN NEW CORP. WELL No. 1, Chftn-Larsen TRUSTEE ACCOUNT for Well #1" and it was signed "Napoleon Shalhoob, Jr." Dr. Brannan testified that appellant agreed that for every $1,000 invested the doctor would own a 1 per cent interest in the first well drilled and in the lease on some 2,000 acres. There was no writing to that effect, although the written agreement which appellant offered, and which the doctor did not sign, purported to grant to the doctor for a $10,000 investment approximately a 10 per cent interest in a lease on some 2,000 acres. Aside from the fact that the Chieftain Oil Company held a lease on large acreage there was evidence that all the material representations of defendant were false. He did not have the financial backing he claimed to have. The figures in his checkbook 1,273,456

followed "Invoice #", which he covered up when he showed the figures. His bank balances were small.

Under his first assignment of error appellant contends that his cross-examination of Dr. Brannan was unduly limited in that he was not permitted to question him as to matters occurring after May 26, 1954. He does not state in his brief what he proposed to develop in further cross-examination although he intimated to the court that his purpose was to show that the entire transaction was a joint venture. There was no offer of proof and there is no basis for the claim of error. But even if error had been committed it could not be deemed prejudicial without a consideration of the entire evidence. Appellant has not made a statement of the evidence and is in no position to claim he was prejudiced by any of the court's rulings which he criticizes. Moreover, he entered into a stipulation that in June 1954 he and Dr. Brannan became equally interested in the same Lompoc oil lease operated by the Cousins Oil Company, Inc., of which Dr. Brannan was president, that Dr. Brannan sold stock in the company and was active in its management. It was also stipulated that all the money appellant received from Dr. Brannan was used in drilling the well. These were the facts which appellant sought to prove in the cross-examination of Dr. Brannan and he was satisfied with the stipulation.

The second point is that the court erred in admitting evidence over objection that appellant had sold for $1,000 a 1 per cent interest to one Brughelli in the oil lease and a well being drilled and that in negotiating the sale appellant made the same representations that he had made to Dr. Brannan. It is argued that the evidence was inadmissible inasmuch as it tended to prove the commission of an offense other than the one charged. We perceive no error in the reception of the testimony. Mr. Brughelli testified that appellant told him that he had sold or offered to sell oil interests to one E. A. Stradiotto, to one Charlie Bosio and to a man named Baker. In view of appellant's contention that he and Dr. Brannan were joint adventurers, and that the doctor was not merely an investor, it was proper to receive evidence tending to prove that appellant was engaged in selling percentage interests in the lease in order to finance the drilling of a well. (*People* v. *Dutton,* 41 Cal.App.2d 866 [107 P.2d 937]; *People* v. *Whelpton,* 99 Cal.App.2d 828 [222 P.2d 935]; *People* v. *Murphy,* 17 Cal.App.2d 575 [62 P.2d 592].) The evidence was also admissible under the counts which charged

grand theft, inasmuch as it tended to show that defendant was operating under a common scheme or plan to promote his enterprise by false and fraudulent representations. (*People* v. *Gordon,* 71 Cal.App.2d 606 [163 P.2d 110]; *People* v. *Silva,* 119 Cal.App.2d 863 [260 P.2d 251].)

The court in defining the three forms of theft in its instructions gave definitions of embezzlement, obtaining property by false pretense and larceny by trick and device. At the request of the People the court gave an instruction as to embezzlement which appellant contends was error. There was no evidence of embezzlement and the instructions should have been limited to the other forms of theft. This is a form of error that so frequently occurs in the use of instructions taken from so-called "CALJIC." When these form instructions are used both counsel and the court should first assure themselves that they have direct application to the evidence. The People very properly do not undertake to justify the instruction on embezzlement but contend that "the emphasis is on false pretense in the instructions having to do with theft" and that the error was not prejudicial. We agree that the error was not one which would justify a reversal of the judgment. We find upon examination of the reporter's transcript that the People made no attempt to prove the offense of embezzlement. The evidence of false representations made was so convincing as to preclude any reasonable conclusion that appellant's representations were either truthful or made with honest intentions.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 5, 1957.