[Crim. No. 7162.    Second Dist., Div. Two.    Oct. 19, 1960.]

THE PEOPLE, Respondent, v. ODIS EDGAR WILLIAMS, Appellant.

458

Bradford A. Arthur for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant was convicted of murder in the first degree, Count I, and assault with a deadly weapon with an intent to commit murder, Count II. He was sentenced to the state prison for life on Count I and for the term prescribed by law on Count II, the sentences to run concurrently. Defendant has appealed from the judgment of conviction for murder.

The murdered victim, Mrs. Hattie Eda Williams, was a former wife of the defendant. She resided at 11830 Centralia, in Artesia. The homicide and assault here involved occurred on the night of November 1, 1959. During the previous July defendant had slapped Mrs. Williams and had told her that if he could not have her that no one else could. It was in this same month that Mrs. Williams' divorce from defendant became final. Around the first of October the defendant told

Mrs. Williams that if she ever got in his way again he would kill her.

On the morning of November 1st, Mrs. Williams' sister, Mrs. Slogski, arrived at the Williams home at approximately 7 o'clock with Mrs. Williams' four children, who had spent the night with her. The defendant arrived between 9 and 9:30 that morning by prearrangement, to take the children for an outing. Mrs. Slogski left at 11 o'clock but returned around 6 o'clock. Defendant, Mrs. Williams and the children were there. Defendant remained until about 7:45 that evening, during which time he and Mrs. Williams had an argument relative to his taking the children to a drive-in. Mrs. Williams refused permission, stating that the children had to go to school the next day and pointing out to defendant that he had been drinking, and that he was not supposed to be there when drinking. Although he had been drinking, he was not drunk. Defendant left but returned again about 8:30. Mrs. Williams refused to let him into the house and told him to go home. Defendant remained for some five minutes and then left. Later, Mrs. Williams and her sister turned out the lights, and the latter went into the kitchen to get some coffee, at which time she observed defendant through the kitchen window. When she informed Mrs. Williams of this development, Mrs. Williams told her to call the police.

Mrs. Williams went to the front door with the idea of talking to the defendant through the door and trying to stall him until the police arrived. While Mrs. Slogski was on the telephone she heard the sound of breaking glass and Mrs. Williams yelled to her, "Run to Pioneer for help." According to defendant's statement to the officers, he broke the glass in the door, opened it, and came in. He jabbed the woman at the door with his knife. Although it was dark and he could not see her, he believed this was his wife. She ran and began hollering. Defendant knew Mrs. Slogski was talking on the telephone calling the police. He was immediately beside her. Mrs. Slogski threw the telephone at him, which he claimed hit him in the face. Defendant then stabbed her three times in the abdomen. Mrs. Slogski ran out the front door following her sister. Defendant yelled, "That's right, run, you cowards." After running about 100 yards, Mrs. Williams fell. Mrs. Slogski picked her up and they started to run again, but Mrs. Williams collapsed and died, having been stabbed in the heart. Defendant got into his car and left. He drove to a trailer belonging to Thomas A. Cooper, at 11110 Artesia Boule-

vard. Defendant handed Cooper a knife, which he had procured earlier that evening. Cooper observed that defendant's hands were cut. Defendant explained that he had cut them breaking a window, and then added, "I worked them over," referring to his former wife and sister-in-law. Defendant then stated that one of them had dropped on the road, and that he thought it was his wife. When the officers arrived they discovered two bodies in the street—Mrs. Williams and Mrs. Slogski. Mrs. Williams was bleeding profusely and appeared to be dead. Mrs. Slogski was bleeding but conscious. The officers observed the broken glass of the door of the Williams home, and also noted blood spots on the door steps.

The officers arrested defendant at the Cooper trailer, where they obtained the knife, which defendant had handed to Cooper. A bloody handkerchief was wrapped around his hand. While it appeared to the officers that defendant had been drinking, he was not drunk at that time. He stated that he had obtained the knife in a trailer and had taken it with him to scare and threaten his wife and sister-in-law and their mother. He explained that when no one would let him in at Mrs. Williams' home, he smashed the glass and entered. He further stated that when he got inside there were no lights on and it was dark, he just "began stabbing with the knife at anybody he felt in the room." When told by the officers that his wife was dead, he said something to the effect, "My God, no." He then inquired whether Mrs. Slogski was dead. When told that she was badly hurt, defendant stated, "If I ever get out of this, get out, I will kill her. I will kill her for sure." When asked whether he had been drinking, defendant stated that he had drunk four half-quart cans of beer but nothing else.

Defendant later gave the officers a statement which was reduced to writing. In it he recounted the events of the day and the conversation that he had at the door with his wife when she refused to let him come in, following which he broke into the house and stabbed her and Mrs. Slogski, who was in the process of calling the police. Defendant remembered hitting Mrs. Slogski but did not remember how many times. He expressed the wish that he could kill her, and again later during this interview stated that if he had his sister-in-law in the room he would kill her. At the time he gave this statement, defendant appeared to be emotionally upset.

At the trial defendant amplified the account of his drinking in the late afternoon and early evening of that fateful day, which account included, in addition to the beer, two drinks of whiskey at around 6 p.m. He disclaimed any intention of

stabbing either his wife or sister-in-law when he entered the house that evening. He claimed that his only purpose was to scare away his sister-in-law and then spend the night with "his wife." Defendant claimed that he was unable to remember anything after his sister-in-law hit him on the head with the telephone.

Defendant contends there was insufficient evidence to support his conviction of murder in the first degree. He points out that the People introduced evidence that he had been drinking before the stabbing and also that he had been struck on the head with the telephone before the assault was made. He argues that the People are bound by this evidence, which they introduced, and because of this evidence defendant could not have the requisite intent to commit murder.

Murder is the unlawful killing of a human being with malice aforethought. (Pen. Code, § 187.) Malice is implied when there is no considerable provocation or when the circumstances attending the killing show an abandoned or malignant heart. (Pen. Code, § 188.) A murder which is wilful, deliberate and premeditated is murder of the first degree. (Pen. Code, § 189.) ■ In this connection it must also be remembered that before a judgment of conviction may be reversed on the ground of insufficiency of the evidence, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) ■ Also, we must assume in support of the judgment the existence of every fact which the trial court could have reasonably deduced from the evidence, and then determine whether the facts "justify the inference of guilt." (*People* v. *Deysher*, 2 Cal.2d 141, 149 [40 P.2d 259].) Applying these principles to the factual situation at bar, it is clear that there is ample evidence to sustain defendant's conviction of first degree murder.

[■ Initially, it should be noted that defendant admitted stabbing the deceased when he broke through the door and entered her home against her will on the evening in question. This amply establishes that the killing was unlawful.

■ It is clear from the evidence that there was no provocation for this murder. Mrs. Williams did nothing more than to refuse defendant permission to come in, and to attempt to prevent his entrance. Since there was no provocation on the part of the decedent, the trial court was justified in concluding from the nature of defendant's act and the circum-

stances leading up to it that implied malice was established. (*People* v. *Montezuma*, 117 Cal.App. 125, 132 [3 P.2d 370, 4 P.2d 285].) [██] From the statements that defendant had previously made about Mrs. Williams; the fact that their marriage had broken up and she had obtained a final divorce; that he had earlier that evening procured a knife; the refusal of the decedent to permit him to come into her house; defendant's violently breaking in and ruthlessly stabbing her in the dark; these facts amply justify the trial court in concluding that defendant intended to kill Mrs. Williams and that her murder was deliberate and premeditated. (*People* v. *Steward*, 156 Cal.App.2d 177, 185 [318 P.2d 806].)

██ It is true there is testimony given by the defendant of his relations with the decedent which, if believed, would tend to indicate that he and his former wife had been getting along agreeably. Because of defendant's interest in the outcome of the case, the trial court was not required to believe this testimony (*People* v. *Zilbauer*, 44 Cal.2d 43, 49 [279 P.2d 534], *People* v. *Rush*, 180 Cal.App.2d 885, 886 [4 Cal.Rptr. 853]) and obviously did not believe it.

██ The same conclusion, namely, that the murder was deliberate and premeditated, may be reached by pursuing another theory. Defendant had repeatedly expressed his hatred for his sister-in-law and his desire to kill her. He even expressed an intention to kill her following the incidents of the evening in question. It has been consistently held that if a person intends to kill another it is first degree murder if his acts result in the death of someone else. The intent, in such case, is transferred by law from his intended victim to the person killed. In other words, the crime is exactly what it would have been if the person against whom the intent to kill was directed had in fact been killed. (*People* v. *Buenaflore*, 40 Cal.App.2d 713, 717 [105 P.2d 621]; *People* v. *Suesser*, 142 Cal. 354, 365 [75 P. 1093]; *People* v. *Wells*, 145 Cal. 138, 140 [78 P. 470].) The trial court could have reasonably inferred that defendant intended to kill his sister-in-law, Mrs. Slogski; that such intent was deliberate and premeditated, but that through inadvertence he killed his former wife instead. Under the above authorities he would nevertheless be guilty of first degree murder.

██ Defendant's argument that the People introduced evidence showing that the defendant had been drinking before the murder; that the People are bound by this evidence, and that because of such evidence defendant could not have

the requisite intent to commit murder is not applicable. The statement of the Supreme Court on this thesis in *People* v. *Johnston,* 48 Cal.2d 78, 83 [307 P.2d 921], is here apposite: "Defendant urges that 'where the prosecution introduces evidence favorable to the accused and does not controvert such evidence, the prosecution is bound by such uncontradicted evidence' [citations]. But here the statements of defendant presented by the People were not all uncontradicted evidence in his favor. Rather, the very statements of defendant on which defendant now relies contained, among other evidence, evidence on which, as already indicated, the jury could predicate a determination (based on the evidence in the case as a whole, rather than the isolated statements of defendant which he contends show lack of deliberation and premeditation) that defendant followed his victim from the theater with a formulated intent to injure him fatally." In the instant case there was conflict in the evidence as to the extent and character of the drinking that defendant had engaged in during the afternoon. Some witnesses testified that defendant did not appear to be drunk, either before or after the commission of the murder. On the stand defendant himself would not say that he was sober or that he was real drunk. He further stated that "lots of people would say I was, but I don't think I was." In such circumstances it is clear that the trier of fact could determine that defendant was not so intoxicated that he was unable to form the requisite intent. (*People* v. *Bjornsen,* 79 Cal.App.2d 519, 530 [180 P.2d 443].)

In addition to the evidence presented by the prosecution as to defendant's being struck on the head with the telephone by Mrs. Slogski, it is clear from the story defendant told the police that this occurred *after* he had stabbed his wife. This sequence of events is corroborated by the testimony that Mrs. Williams was at the door attempting to dissuade and prevent defendant from entering while her sister, Mrs. Slogski, was several feet away using the telephone in an effort to call the police. It is thus obvious that there is no merit whatever in this phase of defendant's exculpatory argument.

The judgment of conviction of murder in the first degree is affirmed.

Ashburn, J., and Nourse, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.