[Crim. No. 7224. Second Dist., Div. Two. Jan. 25, 1961.]

THE PEOPLE, Respondent, v. JAMES WILLIAM LINDSEY, Appellant.

James William Lindsey, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and Nat A. Agliano, Deputy Attorneys General, for Respondent.

ASHBURN, J.—Convicted of armed robbery, defendant appeals. He makes no claim of insufficiency of the evidence but argues for reversible error through (1) receipt of a confession obtained by "psychological coercion and duress," and (2) receipt of evidence of other crimes committed by him.

Respondent's proof shows that in the early morning of October 17, 1959, defendant accosted a sailor, Donald H. Largent, who was walking on Anaheim Boulevard in Long Beach, and asked for a light. Largent said, "I don't smoke," whereupon defendant told him to stop and came running up with a shotgun which was pointed at him; keeping it in this position defendant marched Largent down the street and another man appeared, putting a rag around his face as a mask. Largent said to defendant, "if it's money you want I'll give it to you," and defendant said, "you do just that." Being handed some money defendant inquired if that was all the victim had; the other man went through the sailor's jumper pocket, found more money and said, "Oh, you are trying to hold out on me," and told him to lie down on the grass; while he was doing so the two men took his shoes off and searched and asked for his money belt. As he started to raise himself defendant hit him on the side of the face, saying, "I told you not to look"; first a hit with the fist and then several jabs on the side of the head with the gun, and "I'll blow your head off." About $15 in all was taken from the sailor. He was ordered to turn around, walk up the street and not turn back. This he did until he thought he was out of range and then he ran and with the help of a motorist soon reported the incident to the police. About a week later he saw defendant in a police line-up and exclaimed, "that's the man that held me up"; defendant, within hearing distance and not behind a partition or screen, said nothing.

The State's showing as to a confession was as follows. Defendant having been arrested on October 26, 1959, he was interviewed by police on the morning of the 27th, at which time he denied perpetration or knowledge of the robbery. After his identification by Largent, Officers Wiggins, Baxter and Sizemore talked again with defendant; at first he denied robbing the sailor and the police told him: " 'Now, the man

has identified you, told you to your face that you were the man, we have the shotgun that you used.' And he says, 'Yes, I'm the man that held him up.' We asked him if there was another person with him and he said there was. We asked him if he cared to name him and he said that he didn't.'' Defendant was then taken into another room where a stenographer took the conversation in shorthand and later transcribed it. Upon this transcription defendant made a marginal note, ''not sure of date,'' and signed the same.

He therein said that he and another colored boy robbed the man who had identified him at the line-up, that this occurred at Anaheim and Elm about 2:30 a. m. on Saturday, October 17th; that they used a 12-gauge double barreled shotgun which was loaded at the time; they took not over two or three dollars; he had the gun over his arm, sticking up, when he approached the victim, cradled in his arm; they did make the victim lie down on the grass; defendant had been drinking quite a little that night and his memory was not good; he identified the gun when shown it by police. ''Q. Has there been any force or violence used on your person to induce you to make this statement? A. No. Q. Any police officer beat on you, abuse you or strike you? A. No. Q. You have been treated all right—we have treated you all right, have we not? A. Yes. Q. Has there been any promise of immunity or reward held out to you to induce you to make this statement? In other words, have we promised you that you wouldn't be prosecuted or you wouldn't go to jail for this particular crime? A. No.'' Officer Wiggins testified that all statements made by defendant were freely and voluntarily made.

The phrase ''for this particular crime'' is the fulcrum on which appellant raises his claim of mental duress. The officer testified that there was a promise made to defendant ''that two robberies that he told us about after this robbery would not be filed against him.'' Under questioning by the court it was developed that this promise was made after defendant had told the officers he had committed the robbery now under consideration by this court. On cross-examination the witness said that defendant in the second conversation admitted two additional robberies when charged with them. ''I told him that if there was any more robberies that he committed, if he wanted to get them all together and clean them up, that we would not file only the one on him here.'' Also that the talk about the other offenses occurred prior to the time that defendant gave the statement which was transcribed. Again:

"We had an understanding and he knew what we were talking about, that if there were any more robberies besides this one that he would tell us about that he had committed, them robberies would not be filed, but he understood that this one would be filed on."

On redirect the witness testified: "Q. By Mr. Marin: Did he confess to any other crimes, Mr. Wiggins, other than the two you have mentioned? A. No, not exactly. Q. Well, all right. In any event, the conversation about these other crimes occurred after the first oral statement; is that correct? A. That's true. Q. And you told him that you wanted to clear these things up and get them out of the way so they wouldn't be outstanding, or words to that effect? A. That's right. . . . I told him that if there were any more robberies, that if he wanted to clear them up and not have them outstanding against him later on wherein if we did get him identified later on he might have more additional charges filed against him, and the way it was, he had enough with his background, and he finally admitted these other two, knowing they would not be filed against him."

Officer Baxter was present at the conversation which was taken down by the stenographer. He testified that he and Inspector Ragsdale handed to defendant the transcribed confession on the following day. For 15 to 20 minutes he seemed to be reading it and wrote in the margin "not sure of date," initialed it, then signed each page, initialed his marginal comment on each copy of the document. All these things he did without making any comment.

Such was the extent of the state's original showing on this subject.

Immediately after the reading of the written confession to the jury and before the cross-examination defense counsel, a deputy public defender, unsuccessfully moved to strike the testimony of Wiggins with respect to the matter of other offenses and then advised the court in the absence of the jury that he felt obliged to explore that testimony on cross-examination, saying in part: "It's not the legal question of admissibility with which I was concerned so much as I wanted to make a statement for the record that had it not been for the statement made by the officer, that it would not have been consistent with my planned conduct of the case to explore that field, and I am making this statement only so it can't later be said that I have obviated any objection I may have had to this statement by my own questions. My position is

that I am placed in the position where I must ask these questions in view of the statement that has been made by the witness. There is no objection or motion of any kind pending, I am merely making the statement for the sake of the record." Immediately followed this colloquy: "THE COURT: Would you like to have the Court now sustain your motion or grant your motion and strike the officer's testimony that prior to this time he had been told that they wouldn't file against him, although he had made that confession prior to that time? MR. CULLUM: I'm afraid that even if the Court —— THE COURT: I'd admonish the jury, of course, to disregard it. MR. CULLUM: I doubt strongly, in view of the nature of the statements attributed to my client, that that admonition would be of any value. THE COURT: I'm willing to do that if you so wish. MR. CULLUM: Well, under the circumstances, no, your Honor, I will not make that request, and my reason for not making the request, as I say, is that I don't feel that it is the kind of a thing that the jury could very well disregard. THE COURT: Very well." The court further said: "The Court, in his ruling, as he recalls, at the last trial in this matter, no objection was made to the statement and that you went, yourself, in and developed the fact of this, and that largely motivated the Court in denying the motion at that time, but, as the Court stated, he is willing to grant it now, if you wish. MR. CULLUM: Thank you, your Honor."

It is apparent from Wiggins' testimony that an oral confession was made before the written one, the statement whose transcription became a written confession. The court so ruled when disposing of counsel's objection to receipt of the written confession into evidence. "Inasmuch as he had already confessed to the crime before he actually signed this document in this particular conversation, confessed to this charge previously before any discussion was had of the prior crimes and the officers' granting him immunity from those, they obviously, then, were merely seeking, for their own records, to clear up some other crimes which were undoubtedly unsolved on their books. The objection, if there is an objection, will be overruled. If it is a motion to strike, it will be denied."

It is also clear that that oral confession could not have been induced by the promise about the other crimes, for they had not yet been discussed. Inducement of the confession through threats, promises or the like is of the essence. ▮▮▮ Where a promise of immunity follows the confession it does not render

same inadmissible. See, *People* v. *Wilkison,* 30 Cal.App. 473, 476 [158 P. 1067] ; *People* v. *Waack,* 100 Cal.App.2d 253, 258 [223 P.2d 486] ; *Carr* v. *State,* 85 Okla. Crim. 429 [188 P.2d 705, 708-709] ; *State* v. *Moore,* 124 Ore. 61 [262 P. 859, 861] ; *State* v. *Morris,* 83 Ore. 429 [163 P. 567, 571].

 It is said in *People* v. *Burwell,* 44 Cal.2d 16, 31 [279 P.2d 744] : "The test in determining whether statements amounting to a confession may be properly admitted in evidence without a denial of fundamental rights appears, by the latest expression of the Supreme Court, to be one of trustworthiness."

*People* v. *Thompson,* 133 Cal.App.2d 4, 14 [284 P.2d 39] : "(*Stein* v. *New York, supra,* 346 U.S. 156, 186 [73 S.Ct. 1077, 97 L.Ed. 1522].) Both in that case and in *People* v. *Burwell, supra,* 44 Cal.2d 16, 31, 32, it has recently been held that the test for admissibility is trustworthiness."

Certainly the instant confession meets that test when viewed in the light of the testimony of Largent, whose story was accepted by judge and jury while defendant's was rejected. But we apprehend that that does not quite dispose of our problem.

 The Wiggins' version of facts leading to the promise concerning other robberies was disputed by defendant who denied any participation in the particular robbery or knowledge of it; said that he did sign the written confession but the statements therein were untrue; he signed because he was afraid. "This sailor pointed me out as the man who robbed him, and later on they took me in the office and talked to me and asked me if I wanted to tell them about it. I said, 'Tell you about what?' They said, 'The robbery.' They asked me did I rob a sailor and I said, 'No.' They put me back in the tank, and a while later they took me out, took me downstairs. They had a folder with complaints in it, robberies. They said, 'Are you going to tell us about the robbery?' I said, 'I don't know nothing about it.' He said, 'Well, we will tell you.' He says, 'We know that you committed this robbery and some other robberies.' So they read them off—they started reading off robberies. I told them I didn't commit the robberies. They told me yes, if I didn't confess to this one robbery, this armed robbery, they would file two others against me. I was afraid then. I tried to get the best way out, the armed robbery, without knowing the armed robbery was the worst one." Also: "They told me that if I would tell them about this armed robbery, that they

would drop the others. . . . They said, 'If you don't tell us, we are going to file all of them. If you tell us, we will only file this one.' So I figured that by the sailor pointing me out, I don't know, I thought it was some frameup or something." Defendant conceded that the officers did not threaten bodily harm nor beat him. "Q. Did someone force you to sign your name to the bottom of this paper? A. No, sir. . . . Q. You did that freely and voluntarily? A. Yes, sir. . . . I tell you, because I was afraid. They had already talked to me before."

Thus we have a conflict as to whether the talk about filing upon the other two robberies preceded or followed the interview which is reflected in the written confession. If the former the confession probably would not be admissible (see *Fricke on California Criminal Evidence* [5th ed.], p. 68); if the latter it would be properly received as an oral confession made without inducement of promises, and the later written document would fall within the "trustworthiness" rule stated in *People* v. *Burwell,* 44 Cal.2d 16, 31, quoted *supra.*

 While it is incumbent upon the reviewing court, in examining the due process question raised by the claim of use of an involuntary confession at the trial, to "go behind the verdict to the extent of making our own determination as to whether the confessions were coerced," nevertheless, "In making this determination we do not weigh the evidence as a trier of fact. Rather, we accept as true that portion of the evidence of coercion which is uncontradicted." (*People* v. *Baldwin,* 42 Cal.2d 858, 867 [270 P.2d 1028].) This principle that the reviewing court should accept for its purposes the fact-finding of the jury upon a disputed issue of voluntary character of a confession has been reiterated and applied in many cases. (See *People* v. *Burwell, supra,* 44 Cal.2d 16, 30; *People* v. *Crooker,* 47 Cal.2d 348, 352 [303 P.2d 755]; *People* v. *Berve,* 51 Cal.2d 286, 290 [332 P.2d 97]; *People* v. *Trout,* 54 Cal.2d 576, 583 [6 Cal.Rptr. 759, 354 P.2d 231]. See also *Fricke on California Criminal Evidence* [5th ed.], p. 61; 19 Cal.Jur.2d, § 432, p. 183.)

In *People* v. *Wade,* 138 Cal.App.2d 531, 536 [292 P.2d 303], we explained the situation as follows: "Appellant's counsel insist that a reviewing court must re-examine the evidence bearing upon the voluntary nature of the confession and make an independent determination of the matter. They cite *People* v. *Jones,* 24 Cal.2d 601 [150 P.2d 801], and quote from page 608 as follows: 'While the weight of the evidence

addressed to the circumstances surrounding the obtaining of a confession is to be determined preliminarily by the trial court, the circumstances constituting improper influences that would exclude a confession present questions of law, reviewable by an appellate court'; but this language is immediately preceded by a significant limitation: 'But before a confession is admitted there must be evidence from which it is possible to determine that the confession was voluntarily made. (*People* v. *Dye, supra,* at p. 270 [119 Cal.App.2d 262 (6 P.2d 313)].)' Later cases make it clear that the appellate court can interfere with the trial judge's determination only when the evidence is uncontradicted and legally insufficient to show the confession to have been voluntary. *People* v. *Baldwin,* 42 Cal.2d 858, 867 [270 P.2d 1028]: 'But due process does require that this reviewing court go behind the verdict to the extent of making our own determination as to whether the confessions were coerced. In making this determination we do not weigh the evidence as a trier of fact. Rather, we accept as true that portion of the evidence of coercion which is uncontradicted. (*People* v. *Millum* (1954), *ante,* [42 Cal.2d] pp. 524, 527 [267 P.2d 1039], and United States Supreme Court decisions there cited.)' *People* v. *Burwell,* 44 Cal.2d 16, 30 [279 P.2d 744]: 'When the question has been resolved against the defendants, the determination will not be disturbed unless it is without sufficient evidentiary support.' See also *People* v. *Millum,* 42 Cal.2d 524, 527 [267 P.2d 1039]; *People* v. *Cucco,* 85 Cal.App.2d 448, 452 [193 P.2d 86]."

As "The test for voluntariness of a confession is whether or not the accused exercised 'mental freedom' in confessing" (*People* v. *Berve, supra,* 51 Cal.2d 286, 291), the dispute as to when the promise concerning other robberies was made becomes of vital significance here, but as substantial evidence supports each side of the controversy it is our duty to follow the implied finding of the jury against defendant, supported as it is by an express finding of the trial judge. ▮ "Where the evidence as to the fact or the voluntary character of the confession is conflicting, it will be presumed by the reviewing court in support of a verdict of guilty that the conflict was resolved against the accused, and neither the verdict of guilty nor the decision of the trial court admitting the confession will be disturbed." (19 Cal.Jur.2d, § 432, p. 184.)

▮ The oral admission having been received properly and the subsequent reiteration of same in a signed document having within it clear indicia of trustworthiness, notwith-

standing the promise made in connection with it, we cannot say in this case that there was any reversible error in the receipt of defendant's confession into evidence.

Appellant also asserts that he was detained 21 days before being arraigned, in violation of section 825, Penal Code, and that the confession was made during this period. The record does not support the claim for the reason, among others, that the confession was made the next day after his arrest. The fact that a confession is made while under arrest is but one circumstance to be considered in determining the question of voluntariness of same. (*People* v. *Amaya,* 40 Cal.2d 70, 76 [251 P.2d 324] ; Fricke on California Criminal Evidence [5th ed.], p. 64.)

The claim of error in admission of testimony showing commission by defendant of other crimes cannot be sustained. The argument is focused upon the testimony of Officer Wiggins as to the promise not to file upon two other robberies which defendant told police he had committed. As the burden rests upon the prosecution to prove preliminarily the voluntary nature of a confession (*People* v. *Berve, supra,* 51 Cal.2d 286, 291), it was incumbent upon it to tell the whole story to the end that judge and jury might properly appraise the claim that the confession was not voluntary. A remark made by the trial judge (above quoted) indicates that that claim was advanced in a former trial of the same charge.

Appellant relies upon the general rule stated in *People* v. *Albertson,* 23 Cal.2d 550, 576 [145 P.2d 7], that "in a criminal prosecution the defendant can be tried for no other offense than that which he is charged in the indictment or information ; evidence of collateral independent crimes is not admissible." The court further says, however : "The equally well recognized exceptions to this rule are clearly defined. Evidence of other crimes may be admitted when it tends directly to establish the crime charged by proving a material fact, where it is part of the res gestae, or where it helps to disclose motive, intent, premeditation, guilty knowledge, malice, or a common plan or scheme." (P. 576.)

*People* v. *Peete,* 28 Cal.2d 306, 314 [169 P.2d 924] : "It is settled in this state, however, that except when it shows merely criminal disposition [citations], evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. 'The general tests of the admissibility of evidence in a criminal case are : . . . does it tend logically, naturally, and by reasonable inference, to establish

any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' "

Witkin on California Evidence, section 136, page 158: "And the cases illustrating the exceptions are so much more numerous than those applying the exclusionary rule that it has been suggested that the true rule could be more realistically stated in affirmative form: That evidence of other crimes is admissible whenever it is relevant to a material issue, and that it should be excluded only where its sole purpose and effect is to show the defendant's bad moral character (disposition to commit crime). (See *People* v. *Peete* (1946), 28 Cal.2d 306, 314, 169 P.2d 924; *People* v. *McMonigle* (1947), 29 Cal.2d 730, 742, 177 P.2d 745; 13 So.Cal.L.Rev. 511; 22 So.Cal.L.Rev.345.)" See also *People* v. *Weitz*, 42 Cal.2d 338, 347 [267 P.2d 295]; *People* v. *Sykes*, 44 Cal.2d 166, 170 [280 P.2d 769]; *People* v. *Gordon*, 71 Cal.App.2d 606, 632 [163 P.2d 110]; *People* v. *Whiteside*, 58 Cal.App. 33, 38 [208 P. 132]; *People* v. *Shalhoob*, 147 Cal.App.2d 455, 458-459 [305 P.2d 264]; *People* v. *Wardwell*, 167 Cal.App.2d 560, 563 [334 P.2d 641].

 Without doubt the challenged evidence was a part of a necessary showing of the prosecution upon the voluntary nature of the confession. Counsel for defendant cross-examined elaborately upon the subject; the harm, if any done defendant, grew out of this cross-examination rather than the State's opening of the issue (as it had to do) in a limited way. However, as we have indicated, there was no error in receiving the evidence.

The judgment is affirmed.

Fox, P. J., and McMurray, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.