[Crim. No. 1482. Fourth Dist. Aug. 10, 1961.]

THE PEOPLE, Respondent, v. GERLENE DeCASAUS, Appellant.

Carl T. Fetterly for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

COUGHLIN, J.—The defendant, appellant herein, was charged with, tried for and convicted of the offense of grand theft, i.e., a violation of sections 484 and 487, subdivision 1 of the Penal Code, in that she obtained the sum of $1,454 from the county of Imperial by false representations. The charge involved a welfare fraud; was based on alleged false representations made by the defendant to representatives of the Imperial County Welfare Department in connection with her application under the act providing for aid to needy children (Welf. & Inst. Code, §§ 1500-1580), as a result of which she received payments during the period of November 1959, to April 1960, in the total sum of $1,454. The defendant moved for a new trial and this motion was denied. Thereupon she was sentenced to imprisonment in the state prison, but exe-

cution of the sentence was suspended and she was placed on probation upon prescribed terms, including a county jail sentence. She appeals from the judgment and from the order denying her motion for a new trial, contending that the judgment and order should be reversed because (1) the evidence is insufficient to sustain two essential elements of the offense charged against her, i.e., that she made any false representations or that any reliance upon such representations resulted in the payment to her of the $1,454; (2) that she was entitled to the aid to needy children benefits which she received whether or not the alleged representations were made; and (3) that the court erred in overruling her objection to certain testimony.

### Sufficiency of the Evidence

When the sufficiency of the evidence to sustain a verdict is attacked upon appeal, the inquiry is whether there is any substantial evidence, direct or indirect, contradicted or uncontradicted, to support the conclusion reached (*People v. Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911]; *People v. Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]), and the facts herein must be stated in accord with this time-honored rule.

In April 1959, the defendant moved from Los Angeles County, where she had been receiving aid for her children, to Imperial County, taking up her residence in Calexico where she was interviewed by a representative of the welfare department of the latter county. At this time, in connection with a proposed application for aid and in response to an inquiry by the welfare worker, the defendant stated that her husband had escaped from the sheriff of Los Angeles County at Malibu; that she did not know his whereabouts; that he might be in Cuba, Venezuela or Mexico. Thereupon the defendant signed an application for aid in which she promised to "notify the county welfare department of any real or personal property transactions, change in income or other financial conditions, . . . of any change in address, or if a parent is absent from the home, any information regarding his address or whereabouts. . . ." In the following May she told an investigator of the district attorney's office, who was attempting to locate Mr. DeCasaus in order to serve him with a failure to provide complaint, that she did not know of her husband's whereabouts. In July, the welfare worker attempted to interview the defendant; called at her home on five occasions; found her absent each time; observed that the mail box was filled

with mail, including that addressed to defendant, to her husband, and to a Peter Derrick; left a note asking the defendant to come to the office; and on July 31st interviewed the defendant, at which time she stated that she had been visiting a friend in Mexicali and that two of her children had been sent to their grandfather's home in Los Angeles for a vacation. At this interview, the defendant was told that she could not receive aid if she was living in Mexico. In response thereto the defendant stated that she was just visiting there. At this meeting, when asked about her husband, the defendant stated she had not heard from him and did not know of his whereabouts. However, the evidence showed that during April and May the defendant and her children were absent every night from their Calexico residence; that in June she was seen in Mexicali with her husband on a number of occasions; also in June she negotiated the purchase of furniture for a business which she said was owned by her husband and herself, stating that his name was Peter Derrick and, after receiving a purchase order from a corporation in Los Angeles, which was in the nature of a guarantee, she signed a conditional sales contract for this furniture, and caused it to be delivered to a place located in Mexico called Almacen de Casas, which consisted of a lower story used for offices and an upper story used for living quarters. Also there was testimony that during the summer the defendant came to her Calexico residence only to wash her clothes; her apartment was not occupied in the nighttime; and this condition continued until the first part of 1960.

The welfare worker had some doubt as to whether the defendant was living at her home and for this reason caused the July 1959 check to be withheld but, after talking with her and being advised that she was merely visiting in Mexicali and had not heard from and did not know of the whereabouts of her husband, recommended that the July check be delivered.

The investigator from the district attorney apparently continued his efforts to locate Mr. DeCasaus; talked with the defendant on July 16 about this but was told that she did not know of his whereabouts; and in October went to Mexico where he saw the defendant and her husband at Almacen de Casas.

In October, the welfare worker again interviewed the defendant, who had been ill; was told that the defendant's children were being cared for by a lady in Mexicali and that she, the defendant, intended to go to Mexicali for a few days

until she felt better; and, in response to an inquiry, also was told that the defendant did not know of the whereabouts of her husband.

In February 1960, the defendant again told the welfare worker that she did not know the whereabouts of her husband, and in April 1960, signed a renewal application in which she stated that she had not seen her husband since he left Malibu and, as far as she knew, he did not have any property in Mexico.

In the months of February, March and April of 1960, the welfare worker called at the defendant's Calexico residence on a great number of occasions but found no one at home. In the spring of this year the defendant was seen by another witness at the Almacen de Casas.

From the foregoing evidence the jury was entitled to conclude that the defendant falsely represented that she did not know the whereabouts of her husband; that she had not heard from him; that she was not living with him; and that she was not living in Mexico. The falsity of these representations, if not shown by direct evidence, is satisfactorily established by inference. In addition, the jury also was entitled to conclude that the defendant's promise to notify the welfare department of any real or personal property transaction, change in income or other financial conditions, of any change in address, or of any information as to the address or whereabouts of her husband, was made without any intention of performing the same and constituted a fraud defined by section 1572, subdivision 4, of the Civil Code. It now is settled "that a promise made without intention to perform is a misrepresentation of a state of mind, and thus a misrepresentation of existing fact, and is a false pretense within the meaning of section 484 of the Penal Code." (*People v. Ashley,* 42 Cal.2d 246, 262 [267 P.2d 271].) The evidence reasonably supports the inference that the defendant knew of the whereabouts of her husband at the time she changed her residence from Los Angeles to Calexico, and rented an apartment in the latter place only to give her a fictitious California residence; she forthwith absented herself every night from this apartment and took her children with her; shortly thereafter her husband's mail came to her Calexico home; even after being seen with him in Mexico, she denied knowledge of his whereabouts; in Mexico she and her husband acted under an assumed name; she did not inform

the welfare department either that she had seen her husband, knew of his whereabouts, was living at the Almacen de Casas, which fact is readily inferable from the evidence, had an interest in a business, or was purchasing property. The proof of the defendant's intention not to perform the promises made to the welfare department was established by more than the mere fact of nonperformance, and fully satisfies the requirements of the law in the premises. (See *People* v. *Phipps*, 191 Cal.App.2d 448, 453 [12 Cal.Rptr. 681] ; *People* v. *Frankfort*, 114 Cal.App.2d 680, 698 [251 P.2d 401]; *People* v. *Davis*, 112 Cal.App.2d 286, 298-299 [246 P.2d 160] ; *People* v. *Chamberlain*, 96 Cal.App.2d 178, 182 [214 P.2d 600] ; *People* v. *Ames*, 61 Cal.App.2d 522, 531-533 [143 P.2d 92].)

The evidence heretofore noted also adequately supports the implied finding of the jury that the representations in question were made with an intent to deceive. Proof of such intent "may consist of reasonable inferences drawn from affirmatively established facts." (*People* v. *Moore*, 164 Cal. App.2d 695, 697 [331 P.2d 226].)

The contention by the defendant that the representations made by her were not relied upon by the county welfare department also is without merit. Although the welfare worker who interviewed the defendant testified that she had suspicions that the defendant knew the whereabouts of her husband, and although the district attorney's investigator had reported seeing both of them in Mexico, the welfare worker also testified that she could not prove that the defendant was not telling the truth and for this reason accepted the truth of the statements made and recommended payment of aid. (See *People* v. *Silva*, 119 Cal.App.2d 863, 868 [260 P.2d 251].) Furthermore, the welfare worker's suspicions referred only to the defendant's representation that she did not know the whereabouts of her husband, and did not refer to the representation that she only was visiting in Mexico and was not living there. Moreover, it satisfactorily appears that the welfare worker relied upon the promise which the defendant made with respect to notifying the department concerning any acquisition of property, change in income, or change of address. In addition, the evidence shows that the representations made by the defendant, together with the written application containing the promises made by her which heretofore have been noted, became a part of the defendant's welfare file and that the county welfare department's representative whose duty it was to approve the payment of aid referred

to and relied upon the information contained in this file in making her decision approving payment.

## Materiality of Representation

 The defendant claims that she was entitled to the aid asked for whether or not she had made the false representations charged against her. In substance, she contends that the representations in question were not material and therefore no fraud occurred.

A grant of aid to needy children is based on a deprivation of parental support or care "by the reason of death, continued absence from the home, or physical or mental incapacity of a parent." (*Welf. & Inst.* Code, § 1500.) In the instant case the application for aid was based on the absence of the children's father from their home. If the welfare department had known that the defendant and her children were living with her husband and their father in Mexico, which is a fact that may be inferred from the evidence, no aid would have been paid to her. The jury was justified in concluding that the father of the defendant's children was not absent from the home in which they actually were living, and that the defendant misrepresented her information concerning his whereabouts and the reason for her being in Mexico, and that she never intended to keep her promise to inform the welfare department of her living in Mexico, because through such information the department would discover that the father of her children was not absent from their home, and the aid would not have been given. (*People* v. *Phipps, supra,* 191 Cal.App.2d 448, 453.) On appeal, the court will assume in favor of the judgment that the jury drew those conclusions reasonably deducible from the evidence which are necessary to support its decision. (*People* v. *Williams,* 185 Cal.App.2d 457, 461 [8 Cal.Rptr. 254]; *People* v. *Dorsey,* 177 Cal.App.2d 807, 808 [2 Cal.Rptr. 644].)

 Acting under its authority to adopt regulations that are consistent with the law and reasonably necessary for the administration of welfare assistance (*People* v. *Shirley,* 55 Cal.2d 521, 525 [11 Cal.Rptr. 537, 360 P.2d 33]), the State Board of Social Welfare enacted Regulation C-161.20, implementing the provisions of section 1550 of the Welfare and Institutions Code by providing that deprivation of support due to the continued absence of a person from the home exists "only if the parents are living separate and apart" and that "eligibility depends on whether or not there is

clear 'dissociation,' i.e., a rupture in the normal family relationship. If the absent parent is away for a specific purpose, such as job-finding, serving in the armed forces, working in another locality, etc., with the intent to return home or to send for his family at a later date, there is no dissociation, and eligibility does not exist." It is obvious that the representations made by the defendant were material to a determination of eligibility under the foregoing regulations.

Furthermore, section 1523 of the Welfare and Institutions Code directs that a child shall be disqualified from receiving aid if the parent with whom he resides refuses reasonable assistance in the enforcement of the obligation of the absent parent to provide support for such child. The statements made by the defendant with respect to the whereabouts of her husband were material to a compliance with the provisions of the aforesaid section, and to the eligibility of her children to receive the aid requested.

The welfare department was entitled to inquire of the defendant concerning the matters about which she made the false representations heretofore noted, and to require her to promise to give the information contained in her application; in doing so it was adhering to its responsibility of giving "due consideration not only for the needs of applicants but also for the safeguarding of public funds" (*People* v. *Shirley, supra,* 55 Cal.2d 521, 525; the representations and the promise in question were material to the granting of aid which followed; and the contention of the defendant to the contrary is without merit.

### Error in Admission of Testimony

The investigator for the district attorney while in Mexico saw the defendant and her husband; returned a few days later and took a photograph of the Almacen de Casas, which was the place where he previously had seen them; and in the course of his examination as a witness was asked to identify this photograph. Thereupon the defendant made the following objection: "If the Court please, I am interposing an objection to this question and to any questions pertaining to an investigation made by this man in his official capacity which took place across the line in the country of Mexico. He is not authorized nor permitted under the law to act as an investigator outside the country, and such evidence should not be proper or admissible in here, having been taken by him in an official capacity in which he could not act outside the jurisdiction of this country." The court overruled

this objection, and the defendant cites this ruling as prejudicial error. On appeal the defendant contends that the testimony given by the investigator was inadmissible because, under the laws of Mexico, he was required to obtain permission from the federal government of Mexico before making any official investigation therein; that he had no such permit; that, consequently, information received through any such investigation was illegally obtained; and that evidence respecting such information, therefore, was inadmissible. This contention was not included within the objection made to and overruled by the trial court; was not argued in support of that objection; and was advanced for the first time on the motion for a new trial.

The ruling of the court on the objection made was proper. There is no showing that the investigator had no authority to make an investigation outside the United States, and even if such fact be assumed, it did not render inadmissible testimony with respect to information obtained by him in the course of such investigation.

The defendant now objects to the testimony in question upon a different ground than that urged at the time of trial and upon which the trial court made its ruling. Such an objection comes too late.

"To warrant consideration by an appellate tribunal of an objection to evidence, it is necessary that the precise ground for its exclusion must have been clearly specified to the trial court." (*People* v. *Renek,* 105 Cal.App.2d 277, 283 [233 P.2d 43]; *People* v. *Lint,* 182 Cal.App.2d 402, 414 [6 Cal.Rptr. 95]; see *Bundy* v. *Sierra Lumber Co.,* 149 Cal. 772, 775-776 [87 P. 622].)

Furthermore, there is no showing that the investigator did not have the permission required by the laws of Mexico, if any such permission was required; it must be assumed that he performed his duty lawfully (*People* v. *Farrara,* 46 Cal.2d 265, 268-269 [294 P.2d 21]; *People* v. *Collins,* 172 Cal.App.2d 295, 302 [342 P.2d 370]); and the defendant's present objection must be overruled for this further reason.

In addition, no evidence respecting the laws of Mexico on which the defendant now bases her objection was offered or introduced at the time of trial, and the defendant did not comply with the requirements of the statute directing the court to take judicial notice of the law and statutes of foreign countries which provides:

". . . to enable a party to ask that judicial notice thereof be taken, reasonable notice shall be given to the other parties to the action in the pleadings or otherwise. . . ." (Code Civ. Proc., § 1875, subd. 4.)

Under the circumstances, we need not pass upon the objection to the testimony of the investigator which the defendant urges on appeal. The contention that the trial court erred in overruling the defendant's objection to the subject testimony which was made at the time of the trial is without merit.

The judgment and order appealed from are affirmed.

Griffin, P. J., and Shepard, J., concurred.