[Crim. No. 3708.    Third Dist.    Sept. 30, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES R. ALLAN JANSSEN, SR., Defendant and Appellant.

364

Samuel J. Scicchitano, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris Maier, Assistant Attorney General, Raymond M. Momboisse and Roger E. Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

REGAN, J.—Defendant Janssen appeals from the judgment of conviction entered after a jury found him guilty of violation of subdivision (b) of section 4530 of the Penal Code (escape).

Subsequent to a burglary conviction and commitment in 1961 Janssen was assigned to Clear Creek prison camp. On June 13, 1964, he was reported missing and later on that date was apprehended while allegedly committing a burglary. At the trial Janssen acted as his own counsel and was found guilty of the escape. He contends there was error committed in that: (1) he was charged with violation of subdivision (b) of section 4532 of the Penal Code and on motion of the district attorney the trial court allowed an amendment of said charge to violation of subdivision (b) of section 4530 of the Penal Code; (2) the district attorney brought Janssen's past records and convictions before the jury and the trial court failed to interrupt the presentation until damage was done to Janssen's case; and (3) Janssen was not given presentable and proper clothing for his appearance at the trial and was refused a hair cut for seven weeks prior to trial which prejudiced the jury; and (4) medical care for an infected prostate was refused him; and (5) the jury selection was improper.

As to Janssen's first contention: Prior to the selection of the jury the district attorney moved to amend the information and the trial court granted the motion. The amended information charged Janssen with the crime of escape from a prison conservation camp in violation of subdivision (b) of section 4530 of the Penal Code in that on June 13, 1964, Janssen did ". . . escape from the lawful custody of . . . Clear Creek Conservation Camp No. 41, while confined therein as a prisoner and convicted of a felony. . . ." The original charge, a violation of subdivision (b) of section 4532 of the Penal Code, relates to escape from a city or county jail, industrial farm or road camp. Upon objection the court ascertained that Janssen understood he was charged with escape from Clear Creek Conservation Camp, had prepared his defense to meet this charge, and thus there was no prejudice. We are in agreement with the conclusion of the trial court.

"The main purpose of an information is to notify the accused of the charge he is to meet at the trial . . . that he may

prepare his defense. . . ." (*People* v. *Romo*, 200 Cal.App.2d 83, 87 [19 Cal.Rptr. 179].) ▮ Janssen knew he was charged with escape from the camp, the evidence presented at the trial was concerned only with this escape, he was plainly informed of the nature of his offense, and thus, he was in no way prejudiced by the amendment. (*People* v. *Rivers*, 188 Cal.App.2d 189, 195 [10 Cal.Rptr. 309].) ▮ It is within the sound discretion of the court to permit an information to be amended. (Pen. Code, § 1009; *People* v. *Baldwin*, 191 Cal.App.2d 83, 87 [12 Cal.Rptr. 365].) ▮ There is no showing of abuse of discretion in this matter.

▮ As to Janssen's second contention: The trial court allowed the introduction of evidence of a prior California conviction for burglary and of his commitment to a state prison—from which he was transferred to the prison camp from which he escaped. This was done to establish the corpus delicti, the elements of the crime charged, and for this purpose the court properly admitted this evidence to establish the prior conviction and imprisonment.

The other reference to a prior conviction for a felony came when Janssen was cross-examined. ▮ It was permissible to ask for purpose of impeachment if he had been convicted of a felony. (*People* v. *De Georgio*, 185 Cal.App.2d 413, 419 [8 Cal.Rptr. 295]; Witkin, Cal. Evidence (1958) § 655, pp. 696-697.)

There is no merit to Janssen's contention that the jury selection was improper. The *voir dire* was adequate and proper.

▮ The record fails to disclose any support for his contentions that he was not given presentable and proper clothing for his trial and was refused a hair cut for seven weeks prior thereto and that medical care was refused. The record fails to show how he was attired nor is any reference made to his hair or his physical condition. Janssen did state in his argument to the jury: "First of all I'd like to say I hope you excuse my attire." However, this fails to give a reviewing court information sufficient to determine that the trial court here required or suffered the accused, a prisoner unable to make bail, to appear in court improperly clothed.

▮ " ' "It is the duty of the defendants to show error, and that means defendants are under an affirmative duty in that respect. It is not proper to attempt to shift that burden upon the court or respondent." ' " (*People* v. *Klimek*, 172 Cal.App.2d 36, 44 [341 P.2d 722]; *People* v. *Seals*, 191 Cal. App.2d 734, 737 [13 Cal.Rptr. 7].) ▮ And where the

brief contains matters on which the record fails to furnish any light such matters cannot be considered on appeal. (*People* v. *Sakelaris,* 151 Cal.App.2d 758 [312 P.2d 263]; *In re Steiner,* 134 Cal.App.2d 391, 399 [285 P.2d 972]; *People* v. *Croft,* 134 Cal.App.2d 800 [286 P.2d 479].)

Respondent brings to the attention of the court the fact of the admission into evidence of Janssen's extrajudicial statement to the sheriff after his arrest, as this question is raised in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal. Rptr. 201, 400 P.2d 97].

Janssen's statement has all the elements of a confession. On June 13, 1964, he "escaped" from the prison camp, where he had been committed after conviction of the crime of burglary. He was taken into custody by two citizens, while he was apparently in the act of committing a burglary. The sheriff was notified and Officer Cason took Janssen into custody. The officer recognized Janssen as the inmate who had escaped a few hours earlier. On June 19, 1964, Janssen was questioned by a second officer in the office of the sheriff who testified at the trial as follows: "Mr. Otis [Assistant District Attorney]: Q. Have you had a conversation with the defendant in respect of his being charged with an escape? A. I did. Q. And where did that conversation take place? A. At the Siskiyou County Sheriff's Office here in Yreka. Q. And who were the persons present? A. Myself and Mr. Janssen. Q. And at what time did it take place? A. It was on the 19th of June, the exact time I do not recall, during the daytime hours. Q. Will you tell the jury what questions you put to Mr. Janssen and what answers he gave to you? A. It was quite a lengthy conversation. Q. Well confining yourself only to the charge of escape? A. I asked Mr. Janssen if he had escaped from 41; he said he had. I also asked him where he was committed to the Department of Corrections from; he told me Sonoma County, charge of burglary, which he was given the time prescribed by law, one to fifteen years is what he told me. I also asked him when he was sent to camp, the Honor Camps; he stated he had gone to Camp 23, Deadwood, and then was transferred this year to 41 at Clear Creek. Q. All right. And I take it that the rest of the conversation you had was in respect of another matter, is that right? The Court: Answer yes or no. The Witness: Yes. The Court: All right, put a question. Mr. Otis: I think that's all. Thank you. The Court: Cross-examination? Cross-

EXAMINATION BY DEFENDANT JANSSON: Q. Mr. Wood, you're chief of the Siskiyou County Detective's Office? A. I'm the Chief Criminal Deputy in the Sheriff's Office. Q. Chief Criminal Deputy, excuse me. You stated that the inmate had told you why he was convicted and sent to prison? A. Yes, sir. Q. And you also stated that this was on the 19th day of June? A. Yes, sir. To the best of my recollection this was the date. Q. Well your recollections are a little off. I have no further questions.''

Janssen acting as his own counsel took the witness stand and the record is as follows: ''THE COURT: I think you should state your name. THE WITNESS: James R. Allan Janssen, Sr. THE COURT: And now since you have no one to put the questions to you, I will permit you then and there to form, to tell the Court and jury such matters bearing upon this trial as you feel relevant, subject to whatever objection may be made from time to time.''

Janssen, testifying in his own behalf, freely admitted his escape, seeking to justify it upon the ground that another inmate had spread false rumors that Janssen was a homosexual, resulting in improper proposals by other inmates. The pressures were such that, although fearing reprisals, he reported the situation to the correctional officers and defended himself by fighting another inmate. When, however, a correctional officer also made improper advances, Janssen left the prison camp.

Janssen in his opening statement, to the jury, made prior to presenting his defense stated as follows: ''Ladies and gentlemen of the jury, I would like on behalf of the defense to present before you at this time witnesses to show that the effect of the escape was not a voluntary or a premeditated criminal action, that it was brought about by pressures other than the Department of Corrections and at this time through a Department of Corrections' Officer whom I do not see here in Court, through his pressures my escape was forced to take place.

''THE COURT: All right, call a witness, Mr. Janssen.''

The whole defense as presented by Janssen was one which acknowledged all of the elements constituting the crime for which he was being tried and sought to show extenuating circumstances arising from the conduct of other prisoners toward him, which might excuse his crime of escape. Throughout the entire court proceedings he acted as his own counsel and wanted no other.

It is true, in a long series of cases prior to *Dorado*, the court has been troubled by confessions obtained without protection of counsel. *Dorado* professedly followed *Massiah* v. *United States* (1964) 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246], and *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], when our Supreme Court stated in *People* v. *Dorado, supra,* 62 Cal.2d 338, at page 345: ''Since we must faithfully discharge our duty to apply to [Dorado] . . . the Constitution of the United States as interpreted by the Supreme Court of the United States, we must follow these recent decisions.''

In *''Massiah''* the defendant after his indictment and release on bail was induced through the trick and device of an agent of the police authorities professing to act as his friend to make damaging statements which were presented to the jury through the testimony of an eavesdropping police agent. In reversing defendant's conviction, the United States Supreme Court held that the defendant had been denied the assistance of counsel '' 'when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel.' '' (Quoting from *People* v. *Dorado, supra,* 62 Cal.2d 338, at p. 346.)

In *''Escobedo''* the defendant had been arrested and interrogated and had then retained a lawyer. He was released on habeas corpus. Ten days later he was rearrested, brought to police headquarters and interrogated. Defendant repeatedly requested to see his lawyer who was present at police headquarters but outside the interrogation room during the latter part of the interrogation of defendant. This request to consult his lawyer was refused. A confession was elicited from defendant. As the court in *Dorado* states (at pp. 346-347): ''The United States Supreme Court held that 'where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied ''the Assistance of Counsel'' in violation of the Sixth Amendment to the constitution as ''made obligatory upon the States by the Fourteenth Amendment,'' *Gideon* v. *Wain-*

*wright*, 372 U.S., at 342 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733], and that no statement elicited by the police during the interrogation may be used against him at a criminal trial.' (*Escobedo* v. *Illinois, supra,* 378 U.S. 478, 490-491.) In its conclusion the court stated: 'We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer.' (*Id.* at p. 492.)

"The facts of the instant case bring it squarely within the rule of *Escobedo* with the exception that Dorado did not retain or request counsel. Thus the two cases parallel each other in the following respects: (1) The investigation in the instant case had ceased to be a general inquiry into an 'unsolved crime' and had begun to focus on defendant. The weight of the circumstantial evidence recited above and available to the officers at the point of interrogation provided reasonable grounds for focusing upon defendant as the particular suspect. If anything, the evidence against defendant at the time of interrogation was more conclusive than that marshalled against Escobedo. (2) The defendant was in custody. (3) The officers did not merely engage in general questioning but subjected defendant to a process of interrogations that lent itself to obtaining incriminating statements. Their purpose in so doing was 'to elicit a confession' (*Escobedo* v. *Illinois, supra,* 378 U.S. 478, 492), 'to "get him" to confess his guilt despite his constitutional right not to do so.' (*Escobedo* v. *Illinois, supra,* 378 U.S. 478, 485.) (4) The record shows that the authorities did not in any manner warn defendant of his 'absolute constitutional right to remain silent.' (*Id.* at p. 491.) Captain Hocker and Mr. Midyett both testified that no such warning was ever given to defendant."

The case at bench is *sui generis* and must be distinguished from *Dorado* as well as from *People* v. *Stewart, supra,* 62 Cal.2d 571. Though the elements of a confession are present, the purpose of the questions asked of Janssen which resulted in the statement was not to elicit a confession. It is true Janssen was in custody but he was already known to be the escapee and the asking of the questions was not a process of interrogations that lent itself to obtaining incriminating statements. Their purpose was not to "elicit a confession" (*Escobedo* v. *Illinois, supra,* 378 U.S. 478, 492), not "to get defendant to confess his guilt despite his constitutional right not to do so." (*Escobedo* v. *Illinois, supra.*)

■ The record is silent on whether or not Janssen was informed of his right to remain silent and of his right to counsel, but we must assume that he was not and that there was no waiver. In *Stewart, supra,* the California Supreme Court quotes, as follows (at p. 581):

"In *Carnley* v. *Cochran* (1962) 369 U.S. 506 [82 S.Ct. 884, 8 L.Ed.2d 70], the United States Supreme Court said, 'The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' (*Id.* at p. 516.)' "

Janssen knowingly and willingly gave the statements, obtained without coercion, in pursuit of a purpose to achieve what he believed would be favorable to him in the subsequent handling of his defense. The crime of escape is one separate and distinct from the ordinary criminal act.   ■   In a prosecution under subdivision (b) of section 4530 of the Penal Code proof must be made primarily that the person charged with the escape was a prisoner committed to a state prison facility and that he was under the custody of prison officials, officers or employees "at the time of his escape."   ■   Since he had already been identified, and the crime for which he was incarcerated was already known or readily determinable, no person other than Janssen could have been the escapee, and he is the only one who could have committed the offense charged. His statement was not a necessary element in a successful prosecution. The case against him was in fact complete upon his apprehension and identification. His statement was merely cumulative of other undisputed evidence in the record and could have, under the facts here, played no significant part in his conviction.   ■   The most significant and important element in the case at bench, however, is the total absence of a process of interrogation having for its purpose the eliciting of incriminating statements for use in establishing the guilt of Janssen in a subsequent prosecution. In the absence of such interrogation there is no reason why the statement made should be excluded from evidence under the ban expressed in *Dorado* and *Stewart*.

■ Under the circumstances of this case the rule of *People* v. *Dorado, supra,* does not bar defendant's statement. We call attention to the statement from *Dorado* (at p. 354):

"Nothing that we have said, of course, should be interpreted to restrict law enforcement officers during the investigatory stage from securing information from one who is later ac-

cused of the crime or from obtaining answers to their questions. Indeed, any statements obtained without coercion, including, of course, the unsolicited, spontaneous confession, given in the absence of the requirements for the accusatory stage, may be admitted into evidence. As the concurring opinion of Justice Traynor in *People* v. *Garner* (1961) 57 Cal.2d 135, 164 [18 Cal.Rptr. 40, 367 P.2d 680], states: 'So long as the methods used comply with the due process standards, it is in the public interest for the police to encourage confessions and admissions during interrogation.' ''

This court is not unmindful of the holding in *People* v. *Forbs,* 62 Cal.2d 847, where the Supreme Court states (at p. 851 [44 Cal.Rptr. 753, 402 P.2d 825]): ''Even if defendant's incriminating statements do not constitute a confession *that requires automatic reversal* upon admission into evidence, such statements were so damaging to defendant that we cannot say that they caused only harmless error under article VI, section 4½ of the California Constitution.'' (Italics added.)

However, the Supreme Court also held in *People* v. *Clark,* 62 Cal.2d 870 [44 Cal.Rptr. 784, 402 P.2d 856] (at p. 881): ''Insofar as Clark is concerned, his extrajudicial statements were clearly confessions, *as that term is used in Dorado,* and thus their admission into evidence must be deemed to have been prejudicial per se.'' (Italics added.)

We, at this point, consider the holding of the Supreme Court in *People* v. *Jacobson* (Sept. 17, 1965) 63 Cal.2d 319, 329 [46 Cal.Rptr. 515, 405 P.2d 555], where the court stated: ''We turn, therefore, to the question whether the introduction of the statements obtained in violation of defendant's right to the assistance of counsel was reversible error. In *People* v. *Dorado* (1965) *supra,* 62 Cal.2d 338, 356, this court held that 'the error is necessarily prejudicial when the statements are confessions.' And in *People* v. *Schader* (1965) 62 Cal.2d 716, 728-729 [44 Cal.Rptr. 193, 401 P.2d 665], the majority emphasized that in considering the effect of confessions obtained in violation of the right to counsel the court will adhere to the rule, laid down in coerced confession cases, that introduction of such statements vitiates the judgment regardless of other evidence.''

*Dorado* holds that involuntary confessions are in a class by themselves and refuses to inquire whether in rare cases their admission in evidence had no bearing on the result.

Notwithstanding, in *Jacobson* the court states: ''Nevertheless, on this record we do have a 'rare case' in which a refusal to inquire into the impact, if any, of the confession on the

verdict would result in complete abandonment of article VI, section 4½ of the California Constitution,'' and further notes the dictum in *Stroble* v. *California* (1952) 343 U.S. 181 [72 S.Ct. 599, 96 L.Ed. 872], where the defendant had confessed repeatedly and the confessions had been used at trial. The court there found the confessions voluntary but noted that had the confession been involuntary a reversal would have followed despite the other confessions. In explaining this view the court noted that ''the confession was a prominent feature of the trial.''

As noted in *Jacobson* it cannot be said that in the case at bench undue emphasis was placed on the statement of Janssen. The jury's task was simply to determine whether Janssen, a convicted felon, left the camp in which he was lawfully confined under circumstances which constituted an escape. Janssen's statement must be examined in the light of *Fahy* v. *Connecticut* (1963) 375 U.S. 85, 91 [84 S.Ct. 229, 11 L.Ed. 2d 171], which related ''the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'' In the case before us we can say with greater emphasis than held in *Jacobson,* ''Under these circumstances the answer must be unequivocally negative.''

Janssen's extrajudicial statement cannot be said to be a confession as that term is used in *Dorado*. To so hold would be to give to the meaning of *Dorado* a result unintended.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.