[Crim. No. 14063. Second Dist., Div. Five. Oct. 17, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. BRUCE GERALD EISENBERG, Defendant and Appellant.

608

Iler & Agapay and Russell E. Parsons for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Marvin Goldsmith, Deputy Attorney General, for Plaintiff and Respondent.

DRUCKER, J. pro tem.*—The defendant's appeal from his conviction of forgery is based upon the grounds, (1) insufficiency of the evidence and (2) prejudicial error by the court in allowing cross-examination of the defendant, over his objection, beyond the scope of his direct testimony.

Considering, as we must, the evidence in the light most favorable to the prosecution (*People* v. *Sweeney*, 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Kristy*, 111 Cal.App.2d 695, 698 [245 P.2d 547]) it appears from the record that there is substantial evidence to support the judgment of conviction.

On April 26, 1966, at the Union Bank, North Hollywood branch, the defendant representing himself to be Mr. Rogers, informed Mr. Geary, a bank employee, that he wanted to open a commercial account for Rogers Machinery Company but that he did not have the necessary legal papers. Mr. Geary escorted him to the new accounts department and introduced him to Mrs. Kohlmeier. At the request of the defendant an account was opened under the name of Rogers Machine Com-

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

pany, with Nate Rogers as sole owner. The defendant signed the signature card as Nate Rogers and made a deposit of $100.

Three days later, on April 29, 1966, at the Union Bank, Eighth and Hill Street branch, the defendant presented to Mr. Nelson, manager of tellers, a check to be exchanged for a cashier's check to be made payable to Rogers Machine Company. The defendant identified himself as Nat or Nate Rogers. The check was in the sum of $3,229.67 drawn on the Union Bank, made payable to Rogers Machine as payee, and Tech-Aero by Maurice Sindleman, as payor. The signature card obtained by Mr. Nelson appeared to check out with the signature on the check, the defendant filled out the requisition for the cashier's check (except for the printing of Rogers Machine by Mr. Nelson), endorsed the Tech-Aero check by printing Rogers Machine and writing Nate Rogers. The cashier's check was then issued to him. The same day, the defendant presented the cashier's check to Miss Weber, teller of the North Hollywood branch of the Union Bank. He obtained from her $3,000 in cash, $229.67 was deposited to the Rogers Machine account, after the deposit slip reflecting this transaction was approved by Mr. Allen, a bank officer. On May 2, 1966, Miss Estin, teller at the North Hollywood branch, cashed a check in the sum of $300 presented by the defendant drawn on the account of Rogers Machine Company.

The defendant was employed as an expeditor for Tech-Aero Corporation for a total period of two to three months including the month of April 1966. He quit without notice the same day it was discovered that the $3,229.67 check was a forgery. The signature on the forged check was a facsimile of the signature of Mr. Sindleman, president of Tech-Aero.

In the course of an investigation at Tech-Aero, the security agent of Union Bank obtained the name of the defendant as a possible suspect. In May 1966, the agent exhibited a group of photos, without comment, separately to Mrs. Kohlmeier, Mr. Geary and Mr. Nelson, and asked if he or she could identify the man who had presented the forged instrument or who had some connection with the transactions pertaining to the forged instrument. Each one of them selected the photograph of the defendant. Mr. Nelson first picked out two photos from the group of photos, as he was not quite sure, but finally selected the photo of the defendant. All of the bank witnesses identified the defendant as the "Nate Rogers" with whom they had dealings concerning the forged instrument.

From exemplars of handwriting and printing furnished by the defendant, the examiner of questioned documents could not form an opinion one way or the other regarding the signature "Nate Rogers" on the instruments in question as having been written by the defendant. He had a qualified opinion that the printing of "Rogers Machine" endorsed on the forged check and the cashier's check, could have and were probably made by the defendant.

From a test made by the Scientific Investigation Division of the Los Angeles Police Department five months after the bank instruments in question were issued, six identifiable fingerprints were obtained, none of which were identified to be of the defendant. The possibility of a fingerprint remaining on paper for approximately six months is very slight.

Appellant challenges the sufficiency of the evidence, primarily as to the identification of the defendant by the bank employees. He claims that each of the identifying witnesses was impeached for failing to recognize the defendant when they saw him subsequent to April 26, 1966. The respondent answers that the witnesses were not impeached for the reason that each of the subsequent confrontations were contrived under circumstances entirely different from the appellant's activities with the banks. The respondent's point of view is supported by the nature and circumstances of the confrontations, some of which are briefly set forth as follows:

In August 1966, the defendant came to the door of Mrs. Kohlmeier's home. She opened the door part way. The defendant stated in substance that he was checking the distribution of leaflets in the neighborhood. Mrs. Kohlmeier was preparing for a party and did not particularly look at the man's face.

In October 1966, Mr. Geary responded to an invitation to be interviewed on a Sunday for a job at a new bank. The designated place for the interview was an insurance office. No one was there except the defendant and Mr. Geary. The defendant pretended he was seeking an installment loan officer for a new bank. Mr. Geary was at that office about a half hour. He was asked if he recognized the interviewer to be Nate Rogers, and he replied, "I did and I didn't. . . . The circumstances under which I was seeing Mr. Rogers the second time were so utterly foreign to the first time I had seen him that I couldn't believe that he could be the same person. He looked very much like the same person. He was wearing a different coat and he was not wearing sunglasses at this time when he had the first time I had met him in April."

In October 1966, Mr. Nelson was walking across the lobby of the bank when he was approached by the defendant. He inquired about some bank service. Nelson saw the defendant about two or three minutes and did not then recognize him as the person who had presented himself as Nate Rogers in April, although he was vaguely familiar.

The circumstances as hereinabove exemplified would not serve to enhance the recognition of a person who looks familiar, but, rather, would serve to divert such recognition. Thus, the failure of the identifying witnesses to recognize the defendant under these extraneous circumstances, four to six months later, cannot, in and of itself, be considered as evidence which discredits or impeaches the identification of the defendant by the People's witnesses as a matter of law.

In *People* v. *Kittrelle*, 102 Cal.App.2d 149, 154 [227 P.2d 38] it is stated that: "The question of identification of the perpetrator of a crime is one for determination by the trier of fact and unless the evidence of identity is so weak as to constitute no evidence at all this court cannot set aside the decision of the trial court. (*People* v. *Alexander*, 92 Cal.App.2d 230, 234 [206 P.2d 657]; *People* v. *Waller*, 14 Cal.2d 693, 700 [96 P.2d 344]; *People* v. *Farrington*, 213 Cal. 459, 463 [2 P.2d 814]; *People* v. *Hightower*, 40 Cal.App.2d 102, 106-107 [104 P.2d 378].)

"In order to sustain a conviction it is not necessary that the identification be positive or free from inconsistencies. (*People* v. *Deal*, 42 Cal.App.2d 33, 36 [108 P.2d 103]; *People* v. *Waller, supra*; *People* v. *Suttles*, 61 Cal.App.2d 641, 643 [143 P.2d 506].)"

See also *People* v. *Braun*, 14 Cal.2d 1, at page 5 [92 P.2d 402]: "It is a familiar rule that in reviewing the correctness of factual determinations, the function of an appellate court is limited to the question whether there is any substantial evidence in the record to support the judgment. To entitle a reviewing court to set aside a jury's finding of guilt, the evidence of identity must be so weak as to constitute practically no evidence at all. (*People* v. *Farrington*, 213 Cal. 459 [2 P.2d 814]; *People* v. *Friday*, 18 Cal.App.2d 197 [63 P.2d 303].) In a case such as the present one, where there is positive direct testimony that the defendant was one of the perpetrators of the crime, it is incumbent upon him to show that the testimony is inherently unbelievable in order to prevail. 'A statement, to bear upon its face the brand of improbability, or which may be said to be unbelievable, *per se*, must

involve, we think, a claim that something has been done that it would not seem possible could be done under the circumstances described, or involve conduct that no one but a person of a seriously calentured mentality would be likely to do.' (*People* v. *Haydon*, 18 Cal.App. 543, 553 [123 P. 1102].)''

■ With reference to the term ''substantial evidence'' it '' 'clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with ''any'' evidence. It must be reasonable in nature, credible, and of solid value; it must actually be ''substantial'' proof of the essentials which the law requires in a particular case.' '' (*People* v. *Bassett*, 69 Cal.2d 122 [70 Cal.Rptr. 193, 443 P.2d 777].)

■ In addition to positive identification at the time of trial by each of the identifying witnesses, there was evidence that about one month after the forged check transaction, three of the identifying witnesses, who were shown a group of photographs, selected the photograph of the defendant, and that a number of the witnesses recognized the defendant sitting in back of the courtroom before the preliminary hearing.

■ Appellant also contends that the court committed prejudicial error in failing to restrict the cross-examination of the defendant to the scope of his direct examination, and allowing, over objection of the defendant, his impeachment on collateral matters.

■ The general rule, regarding permissible cross-examination of a defendant in a criminal case who offers himself as a witness, is stated in *People* v. *Pike*, 58 Cal.2d 70, at page 90 [22 Cal.Rptr. 664, 372 P.2d 656] : ''Section 1323 of the Penal Code provides in relevant part that if a defendant 'offers himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief.' As we explained, however, in *People* v. *Zerillo* (1950) 36 Cal.2d 222, 228 [4], 229 [7] [223 P.2d 223], 'This does not mean that the cross-examination must be confined to a mere categorical review of the matters, dates or times mentioned in the direct examination. [Citations.] It may be directed to the eliciting of any matter which may tend to overcome or qualify the effect of the testimony given by him on direct examination. [Citations.] . . . If a defendant takes the stand and makes a general denial of the crime with which he is charged the permissible scope of cross-examination is very wide. [Citations.]' ''

Upon direct examination the defendant testified as follows:

"Q. Mr. Eisenberg, did you personally or in conjunction with anyone take from the premises of Tech-Aero the voucher which is received in evidence as Plaintiff's 2 or any other voucher of the Tech-Aero Company other than a salary check made payable to you?

"A. No, I did not.

"Q. Did you, Mr. Eisenberg, yourself, or in conjunction with anyone else, ever open up an account under the name of Rogers Machinery Company?

"A. No, I did not.

"Q. Or any other similar type name?

"A. No.

"Q. Did you, Mr. Eisenberg, ever pose, either to any bank employee of the Union Bank or anywhere else, as Nate Rogers?

"A. No."

In the course of cross-examination relating to this evidence the prosecutor elicited the following testimony:

"Q. By Mr. Corn: Now, Mr. Agapay asked you if you ever opened up an account with any other similar type name. The answer to that is 'No'; is that correct?

"A. With any similar type name?

"Q. Right.

"A. You referring to Rogers Machine?

"Q. How many accounts did you have, bank accounts, in the year 1966?

"Mr. Agapay: To which counsel objects as being irrelevant and immaterial. We are getting into how many other accounts he has other than something that possibly might be associated with the accounts that are in issue in this trial.

"The Court: Overruled.

"Q. By Mr. Corn: How many accounts did you have in the year 1966?

"A. The year 1966?

"Q. Yes.

"A. Three.

"Q. What names were they?

"A. In my name.

"Q. All of the accounts in your name?

"A. With the exception of the corporate account.

"Q. What was the corporate account in the name of?

"A. Uncle Mutt, Incorporated.

"Q. Did you have an account in the name of Astro Products?

· "Mr. Agapay: If the Court please, Counsel fails to recognize the relevance of this.

"Mr. Corn: Impeachment, your Honor. This witness has testified that he's only had accounts in his name.

"The Court: Objection is overruled.

"Q. By Mr. Corn: Did you have an account in the name of Astro Products?

"A. No.

"Q. Did you have an account which you signed the name Gerald Berg to?

"A. No, I didn't."

Whereupon the prosecutor exhibited to the defendant the bank records showing that an account was opened in 1965, and was in existence in 1966, at a branch of the Bank of America in the name of Astro Products, signed with the name of Gerald Berg. The defendant denied that he ·opened such account ànd also denied that the signature of Gerald. Berg was his. In rebuttal, Miss Lederman of the Bank of America, identified the defendant as the "Gerald Berg" who opened the Astro Products account and who also opened up the "Pat" account at a later date in 1966, signing the name of "Gerald Berg." After the People and the defense rested their case, the defendant requested, and was granted permission to reopen his case. He testified that the testimony he gave pertaining to the "Astro" and "Pat" bank accounts was incorrect. When asked by the prosecutor in what way was it incorrect, the defendant declined to answer the question on the ground that it might tend to incriminate him.

█ Defendant on direct examination testified in effect that he did not commit the offenses charged. He stated that he had never opened an account under the name of Rogers Machinery Company or "any other similar type name." The prosecution over objection asked the defendant how many bank accounts he had in 1966. The objection to this question was upon the grounds that it was irrelevant and immaterial.

The defendant now objects to the testimony in question upon an additional ground not urged at the time of trial that the questions of the prosecution were clearly beyond the scope of cross-examination.

█ "To warrant consideration by an appellate tribunal of an objection to evidence, it is necessary that the precise ground for its exclusion must have been clearly specified to the trial court. [Cases cited.]" (People v. DeCasaus, 194 Cal. App.2d 666, 675 [15 Cal.Rptr. 521].) █ Furthermore,

the questions objected to, were within the scope of proper cross-examination.

The denial by the defendant that he ever opened a bank account under the name of Rogers Machine Company, or "any other similar type name," is subject to interpretation to mean that he never opened a bank account under any fictitious name.

While this claim was broader than the charge defendant had to answer at the trial, he made himself subject to impeachment thereon. (*People* v. *Westek*, 31 Cal.2d 469, 475-480 [190 P.2d 9].)

As far as the testimony of Miss Lederman is concerned, defendant is in no position to claim error on appeal. There was no objection of any kind.

Appellant now contends that his impeachment was upon a collateral matter and therefore prohibited. This contention is without merit as the inquiry complained of was relevant and the subject matter of the impeachment had been within the permissible scope of cross-examination. ▮ Under section 780 of the Evidence Code, there is no specific limitation on the use of impeaching evidence on the ground that it is "collateral."[1] The admission of such evidence is now discretionary with the court.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

---

[1]Law Revision Commission Comment: "The effect of section 780 (together with section 351) is to eliminate this inflexible rule of exclusion. This is not to say that all evidence of a collateral nature offered to attack the credibility of a witness would be admissible. Under Section 352, the court has substantial discretion to exclude collateral evidence. The effect of section 780, therefore, is to change the present somewhat inflexible rule of exclusion to a rule of discretion to be exercised by the trial judge."