[Crim. No. 20192. Second Dist., Div. Two. Jan. 11, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY BILL SPENCER, Defendant and Appellant.

**COUNSEL**

Richard J. Stall, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Daniel W. McGovern, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**HERNDON, J.—**

### Statement of the Case

The information charged appellant with the crime of robbery. During the trial the information was amended by adding allegations that appellant was armed with a deadly weapon, a firearm, at the time of the commission of the charged offense and that he was armed with a concealed deadly weapon, a firearm, at the time of his arrest for said offense.

Appellant's pretrial motion to suppress evidence, consisting of the firearms seized at the time of his arrest, was denied.

After a jury trial, appellant was found guilty of first degree robbery. The allegation that he was armed at the time of the commission of the offense was found to be true. The allegation that he was armed at the time of his arrest was found untrue.

### The Assignments of Error

In support of his appeal from the judgment of conviction appellant contends that: (1) the pretrial identification procedures were so unduly suggestive as to taint his in-court identification by the victim and thus to deny him due process of law; (2) the seizure of the firearms found in his possession at the time of his arrest violated the rule of *Chimel* v. *California*, 395 U.S. 752, 763 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034]; (3) the trial court erred in admitting the "dark handled gun" into evidence because the prosecution relied on the "white, pearl handled gun" as the firearm used by appellant in the robbery; (4) the trial court erred in permitting the filing of the amended information; and (5) the doctrine of *People* v. *Floyd*, 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862], and the rule prohibiting double punishment require modification of the judg-

ment to declare that recently enacted Penal Code section 12022.5 is inapplicable.

In his reply brief appellant raises for the first time the additional contention that the seizure of the revolvers found in his possession was unlawful for the reason that the search was incident to an invalid arrest. In support of this contention he argues that the arresting officers did not have reasonable cause to believe that he was in the trailer because the information upon which they acted in going to the trailer to make the arrest had been supplied by an anonymous and untested informant. Quite apart from its tardy presentation, this additional contention deserves only summary rejection. It is based upon a misconception both of the facts and the applicable law.

### Summary of the Evidence

Karen Lawson, the immediate victim of the robbery, testified that at about 4 p.m. on May 11, 1970, appellant, described as dark haired, and a companion, described as blond, entered the office of Seaboard Finance Company in Hacienda Heights. After speaking to the cashier at the front counter, they joined Miss Lawson, who was acting as relief manager, in a "loan booth."

Appellant, who identified himself as John Stanford or Stafford, indicated that he wished to apply for a loan in order to purchase a car. After Miss Lawson had been interviewing appellant for about five minutes, appellant said, "I have a gun on you." Miss Lawson responded, "You are kidding," or something to that effect. Appellant held the gun up just high enough for her to see it, then put it back underneath the desk and told her to "keep busy, keep talking." About another five minutes passed while Miss Lawson pretended that nothing was amiss.

Miss Lawson is nearsighted and wears glasses which correct her vision to 20/20. She was seated three feet from appellant during this ten-minute period. She was wearing her glasses until he brandished the pistol, at which time she removed them. However, she is able to recognize an individual from a distance of three feet without her glasses.

Appellant then jumped over the counter while his companion left the booth through a swinging door. Each of them had a pistol in his hand. Miss Lawson testified that appellant's weapon had a white pearl handle and was similar in appearance to People's Exhibit No. 8. His companion's weapon was a slightly larger revolver with a dark wooden handle and was similar to People's Exhibit No. 9.

Appellant told Miss Lawson, Miss Seadar and Frank Beltran to go to the back of the office, lie down on the floor and face the wall. The

victims did lie down but Miss Lawson and Mr. Beltran continued to observe the robbers' activities.

Appellant, the dark-haired robber, took about $50 out of Mr. Beltran's cash drawer. His companion, the blond-haired robber, also opened a cash drawer and took money out of it. Appellant took Mr. Beltran's wallet, which contained money. He also went through Miss Lawson's purse, but there was no money in it. Appellant then told Mr. Beltran to open the combination lock on the safe. Mr. Beltran complied but the safe was empty. In all, a total of five or six hundred dollars was taken. The robbers pulled the phones off the walls and left.

Miss Lawson described appellant to the police as being about five feet nine or ten inches in height, having dark hair, dark eyes and a tan complexion. She said that he might have been of "Mexican" descent, although he did not have an accent. She was "absolutely certain" that she could identify appellant.

Two days after the robbery, Sergeant Max R. Chance of the Los Angeles County Sheriff's Department displayed two sets of photographs to Miss Lawson. Sergeant Chance simply told her that he had some photographs to show her, to see if she could identify anyone. The first group contained 20 to 25 photographs; appellant's photograph was not included in this group. Miss Lawson did not identify anyone in the first group. The second group contained about 10 photographs, including appellant's. Miss Lawson identified appellant's photograph saying, "This would be the man, if he was older." Sergeant Chance said, "Are you sure?" Miss Lawson replied, "I am sure that would be the man."

About one week later Miss Lawson attended two lineups. She was not told that anyone in either lineup was a suspect in the case. Miss Lawson did not identify anyone in the first lineup. In the second lineup she identified appellant and so indicated by writing the number "3" on a small card. The second lineup is depicted in a photograph which was received in evidence as People's Exhibit No. 3.

There were six persons including appellant in the second lineup. Except for appellant Miss Lawson had never seen any of the persons in the lineup or their photographs before. So far as she observed, they did not have any unusual characteristics or physical defects. They all appeared to be of "Mexican" origin in that they had dark hair and dark skin. Miss Lawson did not hear anyone in the lineup speak. Prior to this lineup Miss Lawson had seen appellant's picture on one occasion. Frank Beltran also observed the same two lineups, but he was not able to identify

anyone in either lineup. Nor was Mr. Beltran able to identify anyone on the two occasions when he was shown photographs by the police.

John C. Armstrong, a deputy sheriff, testified that on May 15, 1970, at about 1:30 a.m., he and four other officers went to a trailer court with reliable information that appellant was living there in a certain described trailer. As they approached this trailer, the officers observed that the lights were on and as they passed beside the trailer "a male face looked out the window, and then disappeared from our view." When the officers knocked on the front door, a girl answered. He related his ensuing conversation with her as follows:

"We identified ourselves as sheriff deputies, and told her who we were looking for, Mr. Spencer; that he was wanted for armed robbery, and showed her a picture, a mug shot, and said, 'This is the man we are looking for. We have information to believe he is in this trailer at this time, right now,' and she said that he was not in the trailer, that the only persons in the trailer were herself and her girl friend, and we told her we saw a male looking out the window, and she said something, 'You don't have a search warrant. You can't come in,' or something, and we said we were going in anyway; that we had reason to believe he was in the trailer, and we entered the trailer."

Upon entering the trailer the officers found therein another girl and appellant who was "lying in the bed, about the middle of the trailer, on the side away from the door, a little bed. [He was] half under the covers and half out." The lights were out in that section of the trailer and the officers were using their flashlights. Officer Armstrong described the arrest and ensuing search as follows:

"Upon observing him there, what if anything did you or whoever was with you do? A. We identified ourselves as sheriff deputies to Mr. Spencer, and that he was under arrest for robbery, and he indicated he was not Spencer, and said something about, 'You don't have a warrant. You can't be in here,' or, 'You don't have an arrest or search warrant. Get out.' We had already told him he was under arrest, and a little struggle ensued when we were trying to place handcuffs on him. I began feeling under the covers for a gun or weapon where he was lying, and— Q. Did you find a weapon? A. Yes, I found two guns. Q. And where were they found? A. In a box at the foot of this bed, a cardboard box with some ammunition and some other articles. I don't recall exactly what was in the box. Q. Will you describe the weapons you found at that time. A. There were two guns in a box, one was a Charter Arms blue steel, three-inch revolver, brown with grips, .38-caliber, and the other one was a

C.D.M., a 22-caliber revolver, blue steel with white plastic grips. Q. Were these weapons loaded at any time? A. Yes, they were both fully loaded."

On cross-examination the officer testified further as follows: "Q. Was the box on the floor or on something? A. The box was on the floor, at the foot of the bed. Q. Was it under the bed or at the foot? A. At the foot. Q. And the box was in plain view? A. Yes, it was. Q. How far was the box from Mr. Spencer's head or hands? A. Well, as I recall, he was, oh, from his head or his hands probably six to eight feet."

Prior to going to the trailer court to arrest appellant, the officers had been informed that the weapons used by him and his companion during the commission of the robbery were "revolvers and were either blue or black in color."

*The Arresting Officers Went to the Trailer in Which Appellant Was Arrested With Probable Cause to Believe That He Was the Robber They Sought and That He Could Be Found at That Place.*

■ Contrary to appellant's assertion, the informant who provided the officers with a part of the information upon which they acted in going to the trailer to make the arrest was neither anonymous nor untested. The informant's name was James Minz. On two prior occasions Minz had furnished information to Detective Randall of the El Monte Police Department, all of which had proved to be accurate and reliable. This information had implicated one Mike Sutton as appellant's confederate in the instant robbery. It also implicated Sutton as the perpetrator of a burglary previously committed in El Monte.

The information which was provided to the El Monte Police Department by Minz and communicated to Sergeant Armstrong by Detectives Randall, Davis and Martin, and which was corroborated at the time of Sutton's arrest, included the following:

Appellant and Mike Sutton had committed the instant robbery. Sutton could be found in a certain room on the third floor of a three-story brick hotel in the 5100 block on Melrose Avenue in Hollywood. The car they had used was Sutton's red Rambler sedan which had been damaged on the right side. It could be found in the parking lot adjacent to the hotel. Minz told the police that certain property taken in the El Monte burglary could be found in Sutton's room. By checking the El Monte Police Department's records, Detective Randall's partner determined that the described property had been taken in the burglary. The information given by Minz concerning the Rambler automobile, the hotel and room number was verified. When Sutton answered the door, he fit the description of

appellant's accomplice. A watch and a fraternal ring inscribed with the name of the El Monte burglary victim were found in Sutton's room.

Minz had told the police that appellant was living in a trailer park located at Garvey and Seaman in El Monte and that appellant's trailer was the first trailer on the right of the side entrance. The verification of this information is indicated in our summary of the evidence.

Sergeant Armstrong arrested Sutton several hours before he went to the location of the trailer with Detective Davis of the El Monte Police Department and three other officers for the purpose of arresting appellant.

In addition to the information provided by Minz and verified by the discoveries made at the time of Sutton's arrest, Sergeant Armstrong possessed information gained by him in an interview with Miss Seader, one of the victims of the instant robbery. His interview with Miss Seader took place on the night of May 14, some 24 hours before appellant's arrest. She was shown a number of mug shots from which she selected appellant's photograph stating that it resembled one of the robbers.

The corroboration of the information provided by Minz was more than adequate. (*Clifton* v. *Superior Court,* 7 Cal.App.3d 245, 253-254 [86 Cal. Rptr. 612].) His reliability had been amply demonstrated. Moreover, the photographic identification of appellant by a victim of the robbery was reliable per se. (*People* v. *Hogan,* 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868]; *People* v. *Baker,* 12 Cal.App.3d 826, 841 [96 Cal.Rptr. 760]; *People* v. *Bevins,* 6 Cal.App.3d 421, 425 [85 Cal.Rptr. 876].) Thus, the legality of appellant's arrest is beyond serious question.

*There Was Nothing Unfair or Improper in the Identification Procedures; They Were Conducted With Scrupulous Care to Conform With the Requirements of the Law.*

As our summary of the evidence has shown, the identification procedures, both with the photographs and with the lineup, were conducted with impeccable fairness. Appellant contends that the lineup was tainted by the prior display of the photographs by reason of the fact that he was the only person depicted in the photographs who also appeared in the lineup. This contention finds no support either in authority or in reason.

Identification of a criminal by means of a display of photographs serves not only the purpose of implicating the guilty, but also of "sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs." (*Simmons* v. *United States,*

390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967].) Appellant's contention implies the absurd suggestion that the police would be required to compel exonerated persons to appear in the lineup in order to insure its fairness.

Appellant does not claim that he was denied his right to counsel at the pretrial lineup. Therefore, in order to prevail on this issue appellant would be required to show that the lineup was so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process of law. (*Stovall* v. *Denno,* 388 U.S. 293, 301-302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]; *People* v. *Caruso,* 68 Cal.2d 183, 187-189 [65 Cal.Rptr. 336, 436 P.2d 336]; *People* v. *Stanton,* 274 Cal.App.2d 13, 16 [78 Cal.Rptr. 771].)

 As we have shown, the record in the case at bench affirmatively establishes the fairness of the two pretrial lineups. Miss Lawson did not identify anyone in the first lineup, from which appellant was absent, but in the second she identified appellant and so indicated by writing the number "3" on a card. There was nothing suggestive in anything that was said or done in the conduct of the two lineups.

Appellant's specific attacks upon the fairness of the second lineup are based upon false representations of the record. Contrary to the assertions made in appellant's brief, Miss Lawson did not describe appellant as "Anglo-Saxon, Caucasian, and not Mexican." Appellant's trial counsel apologized to the court when the court corrected him by pointing out that a Mexican is a Caucasian. The court's action was obviously necessitated by counsel's questions which confused the import of the terms "Anglo-Saxon," "Caucasian" and "Mexican." With reference to the six participants in the lineup, Miss Lawson testified: "I thought they were all of Mexican descent, or looked like it to me."

We have examined People's Exhibit No. 3, which is a color photograph of the second lineup. This picture convincingly corroborates the testimony of Miss Lawson and shows that the other five dark-complexioned participants were remarkably similar to appellant in stature as well as in the color of their skin and hair. In short, this photograph refutes appellant's assertions and provides strong proof of the fairness of the lineup.

Appellant's reliance upon *People* v. *Caruso, supra,* 68 Cal.2d 183, is misplaced. Both with respect to the quality and reliability of the observations of the eyewitness at the scene and during the course of the robbery and with respect to the fairness of the lineup, the weaknesses in the identifications in *Caruso* contrast with the strength of the identification of appellant in the case at bench.

*The Revolvers Were Properly Seized at Time of Appellant's Arrest; There Was no Violation of the Law Enunciated in* Chimel v. California.

We reject appellant's contention that the seizure of the two revolvers found in the box at the foot of the bed on which he was lying was violative of the rules enunciated in *Chimel* v. *California, supra,* 395 U.S. 752.

The officers went to the place of appellant's arrest with good reason to believe that he was the robber they sought and that he probably was armed with a dangerous weapon. The plainest dictates of prudence required that the officers proceed with utmost caution. Sergeant Armstrong took the obviously reasonable course when he immediately looked for a gun under the blankets and then in the box at the foot of the bed while his fellow officers subdued and handcuffed the resisting suspect.

Our holding is supported by the decisions in *People* v. *King,* 5 Cal.3d 458 [96 Cal.Rptr. 464, 487 P.2d 1032], and *People* v. *Arvizu,* 12 Cal. App.3d 726 [90 Cal.Rptr. 895].

In *People* v. *King, supra,* the arresting officers had been informed that the defendant kept a large supply of dangerous drugs under her bed. Finding her fully clothed and lying on the bed, and having probable cause to believe that she was in possession of contraband, the officers looked under the bed and found an open paper bag containing a substantial supply of amphetamines.

The Supreme Court, while recognizing that *Chimel* would not be controlling in that case because of its prospective application, declared that the search and seizure there in question were not violative of the law enunciated in *Chimel.* In *King* at page 463 the court stated: "Clearly, when defendant was sitting on the bed, the area under it was within 'the area into which [she] might [have] reach[ed] in order to grab . . . evidentiary items.' "

In *People* v. *Arvizu, supra,* 12 Cal.App.3d 726, the officers found a pistol in a duffel bag located at the foot of a bed on which the defendant was lying at the time of his arrest. Again, *Chimel* was not controlling because of its prospective application. However, the court stated its view as follows at page 729: "In our opinion a duffel bag at the foot of a bed on which an arrestee is lying is within the area of permissible search as defined in *Chimel,* particularly where, as here, the police had cause to believe he was in possession of a gun and that was the reason for his arrest."

It requires no argument to show that the reasoning of *King* and *Arvizu*

has even clearer application in the instant case where the officers were confronting a potentially dangerous criminal in the close confines of an auto trailer. Appellant seeks to stretch the *Chimel* rule to an absurd length far beyond its intended reach.

### Both Revolvers Found in Appellant's Possession at the Time of His Arrest Were Properly Admitted in Evidence.

■ Perhaps the most obvious reason indicating the admissibility of both revolvers is the fact that the coincidence of appellant's possession of two weapons fitting the somewhat unique descriptions of those used by the two robbers tended to prove his participation in the robbery. It tended to corroborate the testimony of the witness who positively identified him as one of the robbers. (*People* v. *Rinegold,* 13 Cal.App.3d 711, 720-721 [92 Cal.Rptr. 12]; Evid. Code, § § 210, 351.)

Relying on *People* v. *Riser,* 47 Cal.2d 566, 577 [305 P.2d 1], appellant contends that the court erred in admitting the "dark handled gun" into evidence, because the prosecution relied on the "white, pearl handled gun" as the one used by appellant in the robbery. *Riser* holds that when the prosecution relies on a specific type of weapon, it is error to admit evidence that other weapons were found in the defendant's possession where such evidence does not tend to prove that he committed the crime, but only that he is the sort of person who carries deadly weapons.

However, not only did appellant's possession here tend to prove participation, but this case also falls within another well-established exception to the doctrine of *People* v. *Riser, supra.* A weapon found in defendant's possession when he is arrested, but not identified as the one used in the commission of the underlying offense, can properly be admitted on the issue of the minimum penalty. (*People* v. *Gilbert,* 63 Cal.2d 690, 709-710 [47 Cal.Rptr. 909, 408 P.2d 365].)

People's Exhibit No. 9 was properly admitted in the instant case because appellant was alleged to have been armed with a concealed deadly weapon, to wit, a firearm, at the time of his arrest. Because appellant denied that he was armed when arrested, the jury was required to determine the issue.

Finally, assuming, *arguendo,* that the trial court erred in admitting the revolver with the "dark walnut handle," the assumed error clearly would be classified as harmless.

*The Trial Court Did Not Abuse its Discretion in Allowing the Filing of the Amended Information.*

We find no merit in the contention that the court below erred in ordering the filing of the amended information. Appellant grounds this contention upon the fact that the allegation that he was armed with a concealed deadly weapon at the time of his arrest was not supported by the evidence introduced at his preliminary hearing. He does not question the sufficiency of that evidence to prove that he was armed with a deadly weapon at the time the robbery was committed.

Penal Code section 1009 governing amendments to criminal pleadings provides in pertinent part as follows: "The court in which an action is pending may order or permit . . . the filing of an amended complaint, for any defect or insufficiency, at any stage of the proceedings, . . . A complaint cannot be amended to charge an offense not attempted to be charged by the original complaint, . . ." Under the case law interpreting section 1009, the test applied is whether or not the amendment changes the offense charged to one not shown by the evidence taken at the preliminary examination. (*People* v. *Crosby,* 58 Cal.2d 713, 723 [25 Cal.Rptr. 847, 375 P.2d 839]; *Patterson* v. *Municipal Court,* 17 Cal.App.3d 84, 88 [94 Cal.Rptr. 449]; *People* v. *Valles,* 197 Cal.App.2d 362, 371 [17 Cal.Rptr. 204].)

Obviously the amendment of an information to allege that a defendant was armed with a deadly weapon at the time of his arrest does not change the offense in any way. This allegation has nothing to do with the elements of the offense charged or its degree. It affects nothing other than the minimum term of the sentence. (*People* v. *Cooper,* 256 Cal.App.2d 500, 505 [64 Cal.Rptr. 282], cert. den. 391 U.S. 953 [20 L.Ed.2d 867, 88 S.Ct. 1858].) In this respect it is similar to the amendment of an information to charge priors, which is allowable. (*People* v. *Finnegan,* 192 Cal.App.2d 151, 155 [13 Cal.Rptr. 264, 17 A.L.R.3d 1258]; *People* v. *Roberson,* 167 Cal.App.2d 429, 432 [334 P.2d 666]; *People* v. *Ashcraft,* 138 Cal.App.2d 820, 825-826 [292 P.2d 676].)

The claim that the court erred in ordering the filing of an amended information cannot be raised for the first time on appeal. (*In re Joe R.,* 12 Cal.App.3d 80, 85 [90 Cal.Rptr. 530]; *People* v. *Ball,* 211 Cal.App.2d 435, 439 [27 Cal.Rptr. 274]; *People* v. *Huerta,* 148 Cal.App.2d 272 [306 P.2d 505].) Although appellant objected to the filing of the amended information, he did not do so on the ground upon which he now relies, i.e., that the allegation in question was not supported by the evidence produced at the preliminary hearing. Rather, he complained only that the offer of the amendment was tardy and untimely. Therefore, the issue

may not be presented for the first time on appeal. (Cf. *People* v. *De Santiago*, 71 Cal.2d 18, 22 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Robinson*, 62 Cal.2d 889, 894 [44·Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Eisenberg*, 266 Cal.App.2d 606, 614 [72 Cal.Rptr. 390].)

Moreover, the asserted error could not reasonably be regarded as prejudicial in the circumstances of this case. ■ The essential purpose of an information is to inform the accused of the charge he is required to meet at the trial so that he may prepare his defense. (*People* v. *Janssen*, 237 Cal.App.2d 363, 365-366 [46 Cal.Rptr. 866]; *People* v. *Romo*, 200 Cal.App.2d 83, 87 [19 Cal.Rptr. 179]; see *In re Joe R., supra*, 12 Cal. App.3d 80, 85.) ■ That appellant was aware in advance of his trial that his being armed at the time of his arrest would be a significant issue in the case is evidenced by the fact that, prior to the trial, he moved to suppress the revolver pursuant to Penal Code section 1538.5. And finally, the allegation that appellant was armed when arrested was found to be untrue.

*Penal Code Section 12022.5 Is Applicable in a Case in Which a Firearm Was Displayed With Menace in the Commission of a Robbery.*

■ The plain language of Penal Code section 12022.5 and the well-reasoned decision in *People* v. *Henry*, 14 Cal.App.3d 89, 92-93 [91 Cal. Rptr. 841], dictate the rejection of appellant's contention that the doctrine of *People* v. *Floyd*, 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862], and the prohibition of double punishment in Penal Code section 654 operate to render section 12022.5 inapplicable in this case. To sustain this contention would necessitate a flagrant judicial nullification of a valid legislative enactment. As stated in *People* v. *Washington*, 17 Cal.App.3d 470, 475-477 [94 Cal.Rptr. 882], the "use" of a firearm within the meaning of section 12022.5 includes "display with menace during the course of the robbery." (See also, *People* v. *Young*, 105 Cal.App.2d 612 [233 P.2d 155].)

Appellant contends that the allegation in the amended information "that at the time of the commission of the [robbery] said defendant was armed with a deadly weapon, to wit, a firearm" was not sufficient to invoke section 12022.5. We reject this contention for the reasons stated in our decision in *People* v. *Washington, supra,* at pages 474 and 475. In *Washington* we held that a substantially identical allegation fully subserved the function of a criminal pleading in giving the accused notice of the offense with which he is charged and would support a finding of using a firearm without the further necessity of alleging the aggravating element of use stated in section 12022.5.

*In Order to Invoke Penal Code Section 12022.5, It Is Necessary That the Trier of the Facts Make a Specific Finding That the Defendant Used the Deadly Weapon in the Commission of the Offense and the Judgment Must so State.*

■ In *People* v. *Washington, supra,* we held that a judgment which recites only that the defendant was armed at the time he committed the robbery "is ambiguous in that it did not explicitly state whether it found defendant had violated section 12022 or whether he had violated the more specific provisions of section 12022.5. In view of the severity of the additional punishment compelled by section 12022.5, we think defendant is entitled to a specific finding in the judgment as to whether his conduct amounted to a violation of that section. If the court should find a violation of section 12022.5, then its judgment should so state. If the court should find merely that defendant was armed with a deadly weapon then its judgment should follow the formula set forth in *People* v. *Floyd,* 71 Cal.2d 879 [80 Cal. Rptr. 22, 457 P.2d 862]." (P. 477.) We remanded the cause to the trial court with directions to vacate the judgment and "to make a specific finding of fact on the application of section 12022.5 to the conduct of this defendant and then enter judgment in accordance with its finding."

Since the jury in the case at bench made no specific finding on the issue of use, and since the instant judgment is ambiguous in exactly the same particular as the judgment in *Washington,* respondent necessarily concedes that section 12022.5 cannot be made applicable in this case without a trial of the issue of use by a properly instructed jury. The position of respondent on this issue is stated by the Attorney General as follows: "The real issue would seem to be whether *People* v. *Washington, supra,* entails that appellant has a right, upon remand, to a trial by a properly instructed jury of the allegation that he 'used' a firearm within the meaning of Penal Code section 12022.5. In *People* v. *Harrison,* 5 Cal.App.3d 602, 609 [85 Cal.Rptr. 302], the court stated that determinations under sections 3024 and 12022 of the Penal Code must be made by a properly instructed jury, upon a specific allegation as to each count, and set forth in a special verdict as to each count.

"Section 969c of the Penal Code provides for the right to a jury trial of allegations that a defendant was armed with a deadly weapon so as to bring him within the operation of Penal Code sections 3024 and 12022. The addition of Penal Code section 12022.5 in 1969 was not accompanied by an amendment of section 969c to include section 12022.5. However, in view of the California Constitution's guarantee of the right of jury trial (art. I, § 7), it would seem that this omission does not manifest a legislative intent to exclude allegations under section 12022.5 from the class of cases in which there is a right to a jury trial.

"Therefore, respondent submits that the cause should be remanded to permit the People the opportunity to try to a jury the allegation that appellant 'used' a firearm within the meaning of Penal Code section 12022.5. If the People decline the opportunity, then the judgment should be modified to indicate that neither sections 3024 and 12022 nor section 12022.5 of the Penal Code are applicable in this case."

Counsel for appellant has made a convincing argument that to subject appellant to such a "piecemeal trial" would be prejudicial and inappropriate. We agree that *Washington* provides no precedent for this procedure in a jury case. *Washington* was tried by the court without a jury. In that situation the trial court could make the required specific finding on the record made at the trial—a relatively simple procedural process. But in the case at bench a remand with directions that a specific finding be made on the issue of use would require the impanelment of a new and different jury and a trial in which the admissible evidence bearing upon the limited issue would be practically coextensive with that received at the plenary trial. This conclusion certainly is unavoidable if, as was held in *Washington,* the issue is one of fact for the trier of the facts, and if, as respondent concedes, it is an issue upon which the defendant is entitled to a jury trial. It appears that the concession is legally compelled. (Cf. *People* v. *Harrison, supra,* 5 Cal.App.3d 602, 609.)

It is our conclusion that the practical realities of the situation, combined with the valid arguments of appellant in opposition to an unprecedented bifurcation of a jury trial for the purpose of determining the limited issue of penalty, dictate the rejection of that procedure in the circumstances of this case. It seems not unreasonable to hold that the failure of the prosecution to request either the necessary jury instruction or the submission of the requisite special verdict should be taken as an indication that section 12022.5 has not been invoked.

The judgment convicting appellant of first degree robbery is affirmed. The judgment is hereby modified by inserting therein the statement that sections 3024, 12022 and 12022.5 of the Penal Code are inapplicable.

Roth, P. J., and Fleming, J., concurred.